THE PEOPLE OF THE STATE OF NEW YORK ex rel. DURHAM REALTY CORPORATION, Appellant, *v.* EDWARD B. LA FETRA, a Justice of the City Court of the City of New York, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. BRIXTON OPERATING CORPORATION, Appellant, *v.* EDWARD B. LA FETRA, a Justice of the City Court of the City of New York, Respondent.

Constitutional law — landlord and tenant — summary proceedings — statute suspending for two years in the city of New York possessory remedies to regain possession of real property not violative of Constitution — statute temporarily fixing reasonableness as standard of rent not objectionable or violative of due process clause of Constitution — does not deny equal protection of law — nor impair obligation of contracts — not uncertain — jurisdiction of Supreme Court not impaired — September housing laws valid.

1. The state may establish regulations reasonably necessary to secure the general welfare of the community by the exercise of its police power although the rights of private property are thereby curtailed and freedom of contract is abridged. The legislative or

**430** People ex rel. Durham R. Corp. *v.* La Fetra.

[230 N. Y.] Statement of case. [Mar.,

police power is a dynamic agency, vague and undefined in its scope, which takes private property or limits its use when great public needs require, uncontrolled by the constitutional requirements of due proces. The so-called " September housing laws," therefore, should be upheld, if the legislature, having determined the existence of an emergency, has dealt with it in a manner permitted by constitutional limits upon its power.

2. The legislature may repeal or suspend in whole or in part the remedy of summary proceedings for the possession of real property provided by the Code of Civil Procedure. The landlord has no vested or contractual property right in any particular form of remedy so long as he is permitted effectively to recover possession of his real property, and the only effect of chapter 942 of the Laws of 1920 is temporarily to deprive the landlord of the summary remedy given by statute, except in certain cases. A general act abolishing such remedy would not impair the obligation of the contract.

3. The legislative power may, in a season of exigency, consistently with the due process clauses of the State and Federal Constitutions designed to protect property rights, so invade the domain of private contract as to interfere with and regulate the right of a landlord to exact what he will for his own in the way of rent for private property, and an objection to chapter 944 of the Laws of 1920 that when it temporarily fixes reasonableness as the standard of rent in order to prevent oppression, it deprives the landlords of property without due process of law, is untenable.

4. Nor is such statute objectionable on the theory that by it landlords who rent dwellings are denied the equal protection of the law. One class of landlords is selected for regulation because one class conspicuously offends; one class of tenants has protection because all who seek homes cannot be provided therewith. Such classifications deny to no one the equal protection of the laws. The distinction between the groups is real and rests on a substantial basis.

5. Nor do such laws impair the obligation of contracts, as applied to existing leases and tenancies which contain an express or implied obligation to surrender possession at the expiration of the term or as applied to a case where it is claimed that the parties had contracted or stipulated between themselves- in dispossess proceedings that the warrant should be issued on a certain date. The provision of the Federal Constitution that no state shall pass any law impairing the obligation of contracts puts no limit on any lawful exercise of legitimate governmental power and the rule alike for state and nation is that private contract rights must yield to the public welfare, when the latter is appropriately declared and defined and the two conflict. The state, therefore, has the power reasonably to regulate for a time

the terms upon which a landlord under emergency conditions may put his tenants out so long as they promptly pay a reasonable compensation for the use of the property.

6. No constitutional difficulty presents itself in the way of enforcing the laws on the ground of uncertainty as to what constitutes a reasonable rent or an oppressive agreement; nor does the suspension of possessory remedies impair the jurisdiction of the Supreme Court in law and equity. ( *United States* v. *Cohen Grocery,* 255 U. S. ——, distinguished.)

7. The relator was the owner of premises which it let for dwelling purposes under a written lease entered into prior to September, 1920, by the terms of which the tenant contracted to surrender the premises on the expiration of the term. Said term having expired and the tenant having refused to vacate the relator applied to the defendant, a justice of the City Court, for a precept under section 2238 of the Code of Civil Procedure. Defendant refused to entertain the application on the ground that by the provisions of section 942 of the Laws of 1920 the proceeding could not be instituted before November 1, 1922. The relator thereupon applied for a writ of mandamus requiring defendant to issue the precept, asserting that chapter 942 was unconstitutional as impairing the obligation of the contract of lease; depriving the landlord of its property without due process of law; denying to it the equal protection of the laws and taking private property not only for private use but without compensation. *Held,* untenable; that the state may regulate a business, however honest in itself, if it is or may become an instrument of widespread oppression; that the business of renting homes in the city of New York is emergently such an instrument and has, therefore, become subject to control by the public for the common good, and that the regulation of rents and the suspension of possessory remedies so far tend to accomplish the purpose as to supervene the constitutional inhibitions relied upon to defeat the so-called " September housing laws." (L. 1920, chs. 942–953.)

*People ex rel. Durham Realty Corp.* v. *La Fetra,* 195 App. Div. 280, affirmed.

*People ex rel. Brixton Operating Corp.* v. *La Fetra,* 194 App. Div. 523, affirmed.

(Argued January 19, 1921; decided March 8, 1921.)

APPEAL, in each of the above-entitled proceedings, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 24,

1920, which affirmed an order of Special Term denying a motion for a premptory writ of mandamus to compel the defendant to issue a precept for the eviction from the relator's premises of a holdover tenant.

The facts, so far as material, are stated in the opinion.

*George L. Ingraham, John M. Stoddard* and *Alexander C. MacNulty* for appellants. Chapters 942 and 947 of the Laws of 1920 are void so far as they affect leases made before the act took effect, under which the tenant is in possession of the demised premises, as violating section 10 of article 1 of the Federal Constitution, as it impairs the obligation of a contract valid and in force at the time of the passage of the act. (*Reich* v. *Cochran*, 201 N. Y. 450; *Fletcher* v. *Peck*, 6 Cranch, 87; *Green* v. *Biddle*, 8 Wheat. 1; *Bronson* v. *Kenzie*, 1 How. [U. S.] 310; *McCracken* v. *Hayward*, 2 How. [U. S.] 607; *Bedford* v. *E. B. & L. Assn.*, 181 U. S. 227; *Edwards* v. *Kearzey*, 96 U. S. 595; *Von Hoffman* v. *Quince*, 4 Wall. 535; *Effinger* v. *Kennedy*, 115 U. S. 566; *W. & W. R. R. Co.* v. *King*, 91 U. S. 3; *Danolds* v. *State*, 89 N. Y. 361.) The legislation is also prohibited by the Fourteenth Amendment to the Federal Constitution, which provides that " no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." (*Allgeyer* v. *Louisiana*, 165 U. S. 578; *Lochner* v. *New York*, 198 U. S. 45; *Barbier* v. *Connolly*, 113 U. S. 27; *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Cotting* v. *Kansas City S. Y. Co.*, 183 U. S. 87; *Van Zant* v. *Waddell*, 2 Yerg. 260.) This legislation is also void under the Constitution of the state of New York, section 6 of article 1, which provides that no person shall be deprived of life, liberty or property

without due process of law, nor shall private property be taken for public use without just compensation. (*Wynehamer* v. *People*, 13 N. Y. 378; *Matter of Jacobs*, 98 N. Y. 98; *People* v. *Otis*, 90 N. Y. 48; *Slaughter House Cases*, 16 Wall. 36; *People* v. *N. Y. Carbonic Acid Gas Co.*, 196 N. Y. 421; *Ives* v. *South Buffalo Ry. Co.*, 201 N. Y. 271; *Forster* v. *Scott*, 136 N. Y. 577; *Matter of Hopper* v. *Britt*, 203 N. Y. 144.) The exercise by the state of the police power does not justify the legislature in an express violation of the Constitution of the United States and the Constitution of the state of New York. (*Otis* v. *Parker*, 187 U. S. 606; *Mugler* v. *Kansas*, 123 U. S. 623; *Lawton* v. *Steele*, 152 U. S. 133; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Slaughter House Cases*, 16 Wall. 36; *Matter of Jacobs*, 98 N. Y. 98; *Cotting* v. *Kansas City Stock Yards*, 183 U. S. 79; *Van Zant* v. *Waddell*, 2 Yerg. 260.)

*Leonard Klaber* for Battery Realty Company, intervener. The equal protection of the laws guaranteed by the Fourteenth Amendment is to be liberally construed to afford equal remedies to all similarly situated, and classification when attrmpted must be reasonable and not arbitrary, which is not the case here. (*Gulf, C. & S. F. Ry. Co.* v. *Ellis*, 165 U. S. 150; *Phipps* v. *Wisconsin Central R. R. Co.*, 133 Wis. 153; *S. & N. A. R. R. Co.* v. *Morris*, 64 Ala. 193; *C., St. L., etc., R. R. Co.* v. *Moss*, 60 Miss. 641; *Matter of Grice*, 79 Fed. Rep. 627; *Tinsley* v. *Anderson*, 171 U. S. 101.) The classifications attempted have no relation to or basis in the rights to be passed upon, but are purely arbitrary. (*Reich* v. *Cochran*, 201 N. Y. 450.) The Appellate Division erred in its decision, because the equal protection of the laws is a right, not a favor. (*Gulf, C. & S. F. Ry.* v. *Ellis*, 165 U. S. 150; *Matter of Grice*, 79 Fed. Rep. 627; *S. & N. Ala. Ry.* v. *Morris*, 64 Ala. 193; *Reich* v. *Cochran*, 201 N. Y. 450.)

28

434  People ex rel. Durham R. Corp. *v.* La Fetra.

[230 N. Y.]                    Points of counsel.                    [Mar.,

*Alexander C. MacNulty* for Real Estate Board of New York, *amicus curiæ.*

*John P. O'Brien, Corporation Counsel (John F. O'Brien* and *Russell Lord Tarbox* of counsel), for respondent. So much of chapter 942, Laws of 1920, as suspends for two years the jurisdiction of the City Court of the city of New York in respect to applying the remedy of summary proceeding is constitutional. (*Van Rensselaer v. Snyder,* 13 N. Y. 299; *McMullen v. City of Middletown,* 187 N. Y. 37; *Matter of Montgomery,* 126 App. Div. 72; *Lazarus v. M. C. R. Co.,* 145 N. Y. 581; *Laird v. Carton,* 196 N. Y. 169; *O'Connor v. City of New York,* 191 N. Y. 238; *Gaines v. City of New York,* 215 N. Y. 533; *Matter of State Industrial Comm.,* 224 N. Y. 13.)

*Charles D. Newton, Attorney-General (Robert P. Beyer* of counsel), for state of New York. The legislature may restrict or repeal a statutory remedy. (*McMullen v. City of Middletown,* 187 N. Y. 37; *Matter of Montgomery,* 126 App. Div. 72.) Chapter 842 of the Laws of 1920 is constitutional, being a lawful exercise of the police power of the state. (*People v. Havnor,* 149 N. Y. 195; *Rochester v. Gutberlett,* 211 N. Y. 309; *Hodges v. Perrine,* 24 Hun, 516; *People v. D'Oench,* 111 N. Y. 359; *Tenement House Dept. v. Moeschen,* 179 N. Y. 325; 203 U. S. 583; *Health Dept. v. Trinity Church,* 145 N. Y. 32; *Lawton v. Steele,* 152 U. S. 133; *Erie R. R. Co. v. Williams,* 223 U. S. 685; *C., B. & Q. R. R. Co. v. McGuire,* 219 U. S. 549; *German-American Ins. Co. v. Kansas,* 233 U. S. 389; *Jacobson v. Massachusetts,* 197 U. S. 11.)

*William D. Guthrie, Julius Henry Cohen, Special Deputy Attorneys-General,* for the Attorney-General, *Elmer G. Sammis* and *Bernard Hershkopf* for Joint Legislative Committee on Housing, on the brief. The two-year period of suspension was reasonable and not arbitrary. (*Rast v. Van Deman & Lewis,* 240 U. S. 342; *Hebe Co. v. Shaw,* 248 U. S. 297; *Price v. Illinois,* 238 U. S. 446; *Matter of Stubbe v.*

*Adamson,* 220 N. Y. 459; *Municipal Gas Co. v. P. S. Comm.,* 225 N. Y. 89; *Castle* v. *Mason,* 91 Ohio St. 296; *Sullivan* v. *City of Shreveport,* 251 U. S. 169; *Hamilton* v. *Kentucky Distilleries & Warehouse Co.,* 251 U. S. 146; *Johnson* v. *Gearlds,* 234 U. S. 422; *Perrin* v. *United States,* 232 U. S. 478; *People* v. *Schweinler Press,* 214 N. Y. 395; *Muller* v. *Oregon,* 208 U. S. 412.) Neither the contract clause or the due process clause of the Federal Constitution abridges the power or duty of the legislature to enact appropriate and necessary laws in order to protect and safeguard the health, safety, order, morals or general welfare of the public. (*Hadachek* v. *Los Angeles,* 239 U. S. 394; *People ex rel. Nechamcus* v. *Warden,* 144 N. Y. 529; *Legal Tender Cases,* 12 Wall. 457; *Producers Transp. Co.* v. *R. R. Com.,* 251 U. S. 228; *Union Dry Goods Co.* v. *Georgia P. S. Corp.,* 248 U. S. 372; *Texas & N. O. R. R. Co.* v. *Miller,* 221 U. S. 408; *Louisville & N. R. R. Co.* v. *Mottley,* 219 U. S. 467; *Manigault* v. *Springs,* 199 U. S. 473; *Chicago, etc., R. R. Co.* v. *Nebraska,* 170 U. S. 57; *Douglas* v. *Kentucky,* 168 U. S. 488.) The classification made in the statutes is justified by the character and extent of the evil aimed at, and obvious differences in subject-matter. (*Wilson* v. *New,* 243 U. S. 332; *Rast* v. *Van Deman & Lewis,* 240 U. S. 342; *Price* v. *Illinois,* 238 U. S. 446; *Miller* v. *Wilson,* 236 U. S. 373; *Keokee Coke Co.* v. *Taylor,* 234 U. S. 224; *Patsone* v. *Pennsylvania,* 232 U. S. 138; *Central Lumber Co.* v. *South Dakota,* 226 U. S. 157; *Mutual Loan Co.* v. *Martell,* 222 U. S. 225; *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61; *Heath & Milligan Co.* v. *Worst,* 207 U. S. 338; *Carroll* v. *Greenwich Ins. Co.,* 199 U. S. 401; *Budd* v. *New York,* 143 U. S. 517; *People* v. *Havnor,* 149 N. Y. 195.) Chapter 944 is not invalid because it does not specifically define what shall constitute an unreasonable rent and an oppressive agreement therefor. (*Nash* v. *United States,* 229 U. S. 373; *Miller* v. *Strahl,* 239 U. S. 426; *Waters-Pierce Oil Co.* v. *Texas,* 212 U. S. 86; *Omaeche-*

*varria* v. *Idaho*, 246 U. S. 343; *Arizona Employers' Liability Cases*, 250 U. S. 400; *Weed & Co.* v. *Lockwood*, 266 Fed. Rep. 785; *United States* v. *Rosenblum*, 264 Fed. Rep. 578; *United States* v. *Oglesby*, 264 Fed. Rep. 691; *Monongahela Nav. Co.* v. *United States*, 148 U. S. 312; *International Harvester Co.* v. *Kentucky*, 234 U. S. 216.) Chapter 947 is not an unconstituional interference with the jurisdiction of the Supreme Court. (*Matter of Stilwell*, 139 N. Y. 337; *Stern* v. *Met. Life Ins. Co.*, 169 App. Div. 217; 217 N. Y. 626; *Reining* v. *Buffalo*, 102 N. Y. 308; *Payne* v. *N. Y., S. & W. R. R. Co.*, 157 App. Div. 302; *People ex rel. Crane* v. *Hahlo*, 228 N. Y. 309; *People ex rel. Hill* v. *Supervisors*, 49 Hun, 476; *People ex rel. Ryan* v. *Green*, 58 N. Y. 295.) Chapter 947 is applicable to leases entered into prior to its enactment. (*Wilson* v. *New*, 243 U. S. 332; *United States* v. *Fisher*, 2 Cranch, 358, 386; *Billings* v. *United States*, 232 U. S. 261; *People ex rel. C. T. Co.* v. *Prendergast*, 202 N. Y. 188; *People ex rel. Collins* v. *Spicer*, 99 N. Y. 225; *People ex rel. Witherbee* v. *Supervisors*, 70 N. Y. 228; *Larkin* v. *Saffaraus*, 15 Fed. Rep. 147; *Johnston* v. *United States*, 17 Ct. of Cl. Rep. 157.)

POUND, J. The relator in each case, except for the laws enacted at the extraordinary session of the legislature convened in September, 1920, to deal with an emergency in the housing situation in Greater New York, was, under subdivision 1 of section 2231 of the Code of Civil Procedure, entitled to institute summary proceedings for the removal of its tenant upon the expiration of his term. The leased premises were used for dwelling purposes. The tenant had, by written lease executed before the passage of the September laws, contracted to surrender the premises at the expiration of the term and the term had expired on the 30th day of September, 1920. The defendant, when applied to by the landlord to issue a precept under section 2238 of the Code of Civil Procedure,

refused to entertain the application on the ground that by
the provisions of chapter 942 of the Laws of 1920, the
proceeding could not be instituted before the 1st day of
November, 1922.   The landlord thereupon applied for a
writ of mandamus requiring the defendant to issue such
precept, asserting that chapter 942 was unconstitutional
as impairing the obligation of the contract of lease (U. S.
Const. art. II, sec. 10); depriving the landlord of its
property without due process of law; denying to it the
equal protection of the laws (U. S. Const. Fourteenth
Amend.) and taking private property not only for private
use but without compensation (N. Y. Const. art. 1, sec. 6);
in brief, that its private property was taken and turned
over to another without its consent.   The courts have
thus far upheld the constitutionality of the law in question
on the ground that summary proceedings are a creature
of the statute and may be abolished at the legislative will.
But the official explanation of the law appended to and
submitted with the bill states its purpose and effect to be
" to do away with the anxiety of the many people in New
York who have been served with notices to move on
October 1."   This declared purpose draws with it the
consideration of a group of statutes enacted at the same
session to meet a supposed crisis which are closely related
to each other; are a part of the same plan of remedial
protection to the tenants in possession on October first,
and can be fairly understood only when considered as
parts of one comprehensive design.

These statutes, commonly and collectively known as the
September housing laws, include chapters 942–953, inclu-
sive, but chapters 943, 945, 946, 948–953, inclusive, are
not directly before the court on this appeal.   The reason
stated for their enactment is that within New York city
and contiguous counties an emergency in the housing
situation had arisen as a sequence of the activities of the
World War and the astonishing growth of large cities
whereby at the same time building had stopped and the

438   People ex rel. Durham R. Corp. *v.* La Fetra.

[230 N. Y.]          Opinion, per Pound, J.          [Mar.,

home-seeking population of the city had vastly increased; dispossess proceedings, more than had ever been known before, were pending to the number of upwards of 100,000; each proceeding practically involved a family averaging four or five persons; the demand for homes thus became in excess of the supply; the landlords took advantage of the situation to exact, under threats of eviction, whatever exorbitant rents the necessities of the occasion would bring forth; tenants offered themselves who would submit to such demands rather than take the chance of finding other places of abode. The legislature had investigated the situation through the agency of its joint committee; the governor had called the legislature in special session to deal with the subject, although at its regular session in April it had passed what are known as the April housing laws, dealing with the same subject, which had failed substantially to relieve the existing conditions. While the inadequacy of housing facilities in cities had become a matter of world-wide concern, in the closely settled metropolis it was a problem of the utmost gravity, calamitous in its possibilities. The legislature, unequal to the task of caring for all, decided to make the tenants in possession a preferred class by staying until November 1, 1922, all proceedings to dispossess them, except for reasons hereinafter stated, so long as they paid a " reasonable rent," which is the term used for a statutory charge for use and occupation, to be ascertained judicially through a method provided by the statutes.

The owners of dwellings, including apartment and tenement houses (but excepting buildings under construction in September last, lodging houses for transients and the larger hotels), were, therefore, wholly deprived until November 1, 1922, of all possessory remedies for the purpose of removing from their premises the tenants or occupants in possession when the laws took effect, except where the person holding over is shown to be objectionable

People ex rel. Durham R. Corp. v. La Fetra.   439

1921.]                 Opinion, per Pound, J.               [230 N. Y.]

or the landlord seeks to occupy the premises as a dwelling for himself and family, or intends to demolish the building and construct a new building, or has sold to a co-operative ownership plan corporation, providing such tenants or occupants are ready, able and willing to pay a reasonable rent or price for their use and occupation. The presumption is created that any demand for rent greater than that in any year prior to such demand is unreasonable and oppressive. The landlord may not evict the statutory tenants although they remain as free to depart as they were prior to the enactment of the housing laws. To accomplish this purpose the legislature first enacted chapter 942, to amend the Code of Civil Procedure in relation to summary proceedings, which recited that a public emergency existing, no summary proceedings should be maintained until the first day of November, 1922, to recover possession of real property, except for one of the four reasons indicated above. It also provided that in pending holdover proceedings, where no warrant had been issued, the warrant should not be issued unless the proceeding came under one of the exceptions above quoted. This chapter is supplemented by chapter 947, which amends the Code of Civil Procedure in relation to actions to recover possession of real property and prohibits the landlord for the same period from maintaining an action to recover possession of real property, with the same exceptions previously indicated, and by chapter 944, which recites that unjust, unreasonable and oppressive agreements for the payment of rent have been made and exacted from tenants under stress of prevailing conditions whereby the freedom of contract has been impaired, and congested housing conditions resulting therefrom have seriously affected and endangered the public welfare, health and morals in certain cities of the state, preserves the action for rent, provides that the plaintiff may recover a fair and reasonable rent for the premises, and further provides that on default of payment

440    People ex rel. Durham R. Corp. *v.* La Fetra.

[230 N. Y.]               Opinion, per Pound, J.               [Mar.,

of the fair rental value, the landlord may obtain possession of his premises by a dispossess warrant.    The provision in chapter 944 above quoted was first incorporated in chapter 136, Laws of 1920, and applies at least to leases made after April 1, 1920.    Its retroactive effect is not at present before the court for consideration.    Chapters 942 and 947 apply only to " cities of a population of one million or more and in cities in a county adjoining such a city."    Chapter 944 applies to cities of the first class and cities in a county adjoining such city.

Whether or not a public emergency existed was a question of fact, debated and debatable, which addressed itself primarily to the legislature.    That it existed; promised not to be presently self-curative, and called for action, appeared from public documents and from common knowledge and observation.    If the law-making power on such evidence has determined the existence of the emergency and has, in the main, dealt with it in a manner permitted by the constitutional limitations upon legislative power, so far as the same affect the class of landlords now challenging the statutes, the legislation should be upheld.    How it may operate on other classes or individuals not before the court is not our present concern.    The relator comes indisputably within the main purpose of the statutes, but it has no standing to raise questions which do not directly affect it.    (*Arizona Employers' Liability Cases,* 250 U. S. 400, 409.)    When the emergency ceases to exist (*Municipal Gas Co.* v. *Public Service Comm.,* 225 N. Y. 89, 95, 97); when ejectment is sought for other purposes than to dispossess holdover tenants under the protection of the laws; when a landlord desires to withdraw from the business of renting his premises for dwelling purposes, or when other material questions arise, the parties aggrieved will then be heard in their own right.

If chapter 942 alone were to be considered, we would not hestitate to say that the legislature might repeal or

suspend in whole or in part the remedy of summary proceedings for the possession of real property provided by the Code of Civil Procedure. The landlord has no vested or contractual property right in any particular form of remedy so long as he is permitted effectively to recover possession of his real property, and the only effect of the law in question is temporarily to deprive the landlord of the summary remedy given by statute, except in certain cases. A general act abolishing such remedy would not impair the obligation of the contract. (*Conkey v. Hart,* 14 N. Y. 22.) But chapter 947 also prohibits the landlord for two years from maintaining an action to recover possession of his real property at the expiration of the term, and any law which in its operation amounts to a denial or obstruction of rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the Constitution. (*Mc-Cracken v. Hayward,* 2 How. [U. S.] 608, 612; *Barnitz v. Beverly,* 163 U. S. 118, 125.) A reasonable alteration of the remedy which does not materially impair it is constitutional. (*Penniman's Case,* 103 U. S. 714.) The state has, however, made no contract to continue in force the existing possessory remedies in their entirety, nor have the parties so stipulated in their contract. Possessory actions having been for the time done away with, to the extent indicated, the action for rent is preserved by chapter 944, but " it shall be a defense to an action for such rent that the rent is unjust and unreasonable." No tenant is forced out of his home so long as he pays the fair monthly rent, but a dispossess warrant may be issued if he fails to pay. A comprehensive substitute for the possessory remedies thus becomes the keystone of the arch.

To uphold the right of the landlord to maintain ejectment would be to crack the legislative design into fragments which would afford little protection to the tenants in possession. The explanation accompanying the bill,

442    People ex rel. Durham R. Corp. *v.* La Fetra.

[230 N. Y.]            Opinion, per Pound, J.            [Mar.,

chapter 947, which withdraws the remedy of ejectment until November 1, 1922, says: " The summary proceeding of holdover being taken away, the landlord can bring an action in the Supreme Court and recover judgment against the tenant by default in twenty days *and thus defeat the purpose of the legislation abolishing holdovers except in three instances. To obviate this difficulty,* chapter 947 is enacted." Although the separation of the component parts of the general plan into independently numbered statutes signifies the legislative design to save each part that is in itself good on constitutional grounds, chapters 942, 944 and 947 will, if possible, be construed together and given a congruous effect before the court goes to the easier task of considering chapter 942 alone. So taken, the arguments against their constitutionality as a whole are in form the familiar objections which are addressed to the court whenever the exercise of legislative power on private rights is in question. Their force depends upon their application to the particular case.

The proposition is fundamental that private business may not be regulated, and may not be converted into public business by legislative fiat. (*Producers' Transp. Co.* v. *R. R. Comm.,* 251 U. S. 228.) By the application of this principle the act of Congress known as the Ball Rent Law, for the relief of tenants in the District of Columbia, applicable to all rental property, was said to be unconstitutional by the Court of Appeals of the District. (*Hirsh* v. *Block,* 267 Fed. Rep. 614.)* The proposition is equally fundamental that the state may establish regulations reasonably necessary to secure the general welfare of the community by the exercise of its police power although the rights of private property are thereby curtailed and freedom of contract is abridged. (*Chicago, B. & Q. Ry. Co.* v. *Drainage Comrs.,* 200 U. S. 561; *Rast* v. *Van Deman,* 240 U. S. 342; *American Coal Min. Co.* v. *Special Coal & Food Comm.,* 268 Fed. Rep. 563.) The legislative or police power is a

* Reversed by U. S. Supreme Court April 18, 1921.

dynamic agency, vague and undefined in its scope, which takes private property or limits its use when great public needs require, uncontrolled by the constitutional requirement of due process. Either the rights of property and contract must when necessary yield to the public convenience, advantage and welfare, or it must be found that the state has surrendered one of the attributes of sovereignty for which governments are founded and made itself powerless to secure to its citizens the blessings of freedom and to promote the general welfare.

The first question to be considered arises under chapter 944 which provides that it shall be a defense to an action for rent accruing under an agreement therefor that such rent is unjust and unreasonable and the agreement to pay is oppressive. May the legislative power, in a season of exigency, consistently with the due process clauses of the State and Federal Constitutions designed to protect property rights, so invade the domain of private contract as to interfere with and regulate the right of a landlord to exact what he will for his own in the way of rent for private property?

The landlord is a purveyor of a commodity; the vendor of space in which to shelter one's self and family. He has heretofore been permitted to make his own terms with his tenants, but that consideration is not conclusive. Unquestionably some taking of private property for the benefit of a class of individuals is the result of the housing laws. The free choice of tenants; the unlimited right to bargain; these are property rights which may not be affected unless a public advantage over and beyond such rights justifies legislative interference, but " an ulterior public advantage may justify a comparatively insignificant taking of private property for what, in its immediate purpose, is a private use." ( *Noble State Bank* v. *Haskell*, 219 U. S. 104, 110, 580.) While in theory it may be said that the building of houses is not a monopolistic privilege; that houses are not public utilities like railroads and that

if the landlord turns one off another may take him in; that rents are fixed by economic rules and the market value is the reasonable value; that people often move from one city to another to secure better advantages; that no one is compelled to have a home in New York; that no crisis exists; that to call the legislation an exercise of the police power when it is plainly a taking of private property for private use and without compensation is a mere transfer of labels which does not affect the nature of the legislation, yet the legislature has found that in practice the state of demand and supply is at present abnormal; that no one builds because it is unprofitable to build; that those who own seek the uttermost farthing from those who choose to live in New York and pay for the privilege rather than go elsewhere; and that profiteering and oppression have become general. It is with this condition and not with economic theory that the state has to deal in the existing emergency. The distinction between the power of eminent domain and the police power is often fine. In the main it depends on whether the thing is destroyed or is taken over for the public use. If property rights are here invaded, in a degree, compensation therefor has been provided and possession is to be regained when such compensation remains unpaid. What is taken is the right to use one's property oppressively and it is the destruction of that right that is contemplated and not the transfer thereof to the public use. The taking is, therefore, analogous to the abatement of a nuisance or to the establishment of building restrictions, and it is within the police power.

Emergency laws in time of peace are uncommon but not unknown. Wholesale disaster, financial panic, the aftermath of war (*Hamilton* v. *Kentucky Distilleries & W. Co.*, 251 U. S. 146, 161), earthquake, pestilence, famine and fire, a combination of men or the force of circumstances may, as the alternative of confusion or chaos, demand the enactment of laws that would be thought arbitrary under

People ex rel. Durham R. Corp. *v.* La Fetra.   445

1921.]                Opinion, per Pound, J.              [230 N. Y.]

normal conditions. (*Bowditch* v. *Boston,* 101 U. S. 16, 18, 19; *American Land Co.* v. *Zeiss,* 219 U. S. 47.) Although emergency cannot become the source of power, and although the Constitution cannot be suspended in any complication of peace or war (*Ex parte Milligan,* 4 Wall. 2), an emergency may afford a reason for putting forth a latent governmental power already enjoyed but not previously exercised. Thus it has been held that although the relation between employer and employee is essentially private so far as the right to fix a standard of wages by agreement is concerned, Congress may establish a standard of wages for railroad employees to be in force for a reasonable time in an emergency to avert the calamity of a nation-wide strike. (*Wilson* v. *New,* 243 U. S. 332, 348; *Ft. Smith & W. R. R. Co.* v. *Mills,* 253 U. S. 206.)

Even in the absence of an emergency, the state may pass wholesome and proper laws to regulate the use of private property. (*Lincoln Trust Co.* v. *Williams Bldg. Corp.,* 229 N. Y. 313; *St. Louis Poster Advertising Co.* v. *City of St. Louis,* 249 U. S. 269.) Laws restricting the uses of property do not deal directly with the question whether a private business may be limited in its return to a reasonable rate fixed by a force external to the law of supply and demand. Aside from the war power, the regulation of prices, except for public utilities, is unusual, although usury statutes which forbid the taking of exorbitant interest on the loan of money are common. The power of regulation exists, however, and is not limited to public uses or to property where the right to demand and receive service exists or to monopolies or to emergencies. It may embrace all cases of public interest, and the question is whether the subject has become important enough for the public to justify public action. (*Munn* v. *Illinois,* 94 U. S. 113; *Budd* v. *New York,* 143 U. S. 517; *Brass* v. *Stoeser,* 153 U. S. 391; *German Alliance Ins. Co.* v. *Kansas,* 233 U. S. 389; *Oklahoma Operating Co.* v. *Love,* 252 U. S.

331; *Holter Hardware Co.* v. *Boyle,* 263 Fed. Rep. 134; *American Coal Min. Co.* v. *Special C. & F. Comm., supra.*)

The field of regulation constantly widens into new regions. The question in a broad and definite sense is one of degree. As no similar legislation has been construed by the courts, precedent is of little value and may prove misleading. Formulas and phrases in earlier decisions are not controlling. (*Hudson County Water Co.* v. *McCarter,* 209 U. S. 349, 355.) English laws and decisions, based on the long-established practice of considering those in possession of agricultural and pastoral lands and small holdings under lease as having a kind of imperfect moral interest beyond their subsisting term, recognize the tenant right of renewal. But such laws do not control us. They are the offspring of ancient and alien customs which were not transplanted to our soil with the common law. The supposed right of the tenant to remain on the land is not, in this state, recognized as a basis of property right. It is nothing but a chance. The crudest equities may, however, become powerful enough to make such tenant the subject of protection by the law.

Novelty is no argument against constitutionality. Changing economic conditions, temporary or permanent, may make necessary or beneficial the right of public regulation. (*German Alliance Ins. Co.* v. *Kansas, supra.*) Housing in normal times may be and often is a competitive business; landlords may in the lean years and in periods of over-supply be unable to secure a fair return on their investments. Competition will then regulate rents more effectively than legislation can. An historical justification of liberty of contract between landlord and tenant is not a demonstration that the system must survive every exigency. When it temporarily ceases to be adapted to the demands of the present it may be modified, if the best interests of society are thereby served. "An earnest conflict of serious opinion" may arise as to whether such interests have been wisely served or whether

the legislation is anything more than another example of misdirected zeal in dealing with a crisis. But that argument does not address itself to the court. " The scope of judicial inquiry in deciding the question of *power* is not to be confused with the scope of legislative considerations in dealing with the matter of *policy*." (*Chicago, B. & Q. R. R. Co.* v. *McGuire,* 219 U. S. 549, 569; *German Alliance Ins. Co.* v. *Kansas, supra*.) The objection to chapter 944 that when it temporarily fixes reasonableness as the standard of rent in order to prevent oppression, it deprives the landlords of property without due process of law seems untenable when tested by the principles above stated.

The next question is whether the landlords who rent dwellings are denied the equal protection of the law. Legitimate governmental authority ought to be able to protect unobjectionable tenants, ready and willing to pay reasonable rents, from wholesale evictions for the further enrichment of profiteers who have brought themselves to the notice of the legislature by their greed and extortion, without subjecting landlords who have not offended and tenants who have no substantial grievance to a restraint that a class has invited by its conduct. One class of landlords is selected for regulation because one class conspicuously offends; one class of tenants has protection because all who seek homes cannot be provided with places to sleep and eat. Those who are out of possession, willing to pay exorbitant rentals, or unable to pay any rentals whatever, have been left to shift for themselves. But such classifications deny to no one the equal protection of the laws. The distinction between the groups is real and rests on a substantial basis. (*People* v. *Beakes Dairy Co.,* 222 N. Y. 416.)

The next question is whether such laws impair the obligation of contracts, as applied to existing leases and tenancies which contain an express or implied obligation to surrender possession at the expiration of the term or as

448 People ex rel. Durham R. Corp. *v.* La Fetra.

[230 N. Y.]           Opinion, per Pound, J.           [Mar.,

applied to a case where it is claimed that the parties had contracted or stipulated between themselves in dispossess proceedings that the warrant should be issued on October first. The provision of the Federal Constitution that no state shall pass any law impairing the obligation of contracts puts no limit on any lawful exercise of legitimate governmental power. (*Legal Tender Cases,* 12 Wall. 457, 551.) The rule alike for state and nation is that private contract rights must yield to the public welfare, when the latter is appropriately declared and defined and the two conflict. (*Manigault* v. *Springs,* 199 U. S. 473, 480; *Louisville & Nashville R. R. Co.* v. *Mottley,* 219 U. S. 467, 486; *Producers' Transportation Co.* v. *R. R. Comm., supra; Atlantic Coast Line R. R. Co.* v. *City of Goldsboro,* 232 U. S. 548, 558; *Union Dry Goods Co.* v. *Georgia P. S. Corp.,* 248 U. S. 372, 375.) But if the law is " arbitrary, unreasonable and not designed to accomplish a legitimate public purpose " (*Mutual Loan Co.* v. *Martell,* 222 U. S. 225, 234) the courts will declare it invalid.

It is contended, however, that the only laws which may be said to impair the obligation of contracts which have been upheld are those in which the United States, which is not included within the constitutional prohibition, has acted (*Sinking Fund Cases,* 99 U. S. 700, 718) to assert its limited but unquestioned sovereignty; as in the *Legal Tender* cases, to regulate the currency, and in the *Mottley Case* (*supra*) to make illegal all discriminatory rates of interstate carriers; or where the state has acted to regulate public utilities as in the *Producers' Case* (*supra*) to subject contracts for future transportation by common carriers to regulation; or in cases where the effect of laws prohibiting the sale of liquor or narcotics or the conducting of lotteries and the like, for the public good, was indirectly to affect the contract (*Beer Co.* v. *Mass.,* 97 U. S. 25, 32); or in which the state had exercised the power of eminent domain to extinguish a contract right; that the obligation of no ordinary private contract could,

without violence to the plain words of the Constitution, be impaired by the exercise of the police power. As the purpose of these laws is temporarily to deprive landlords of all power to enforce covenants to quit in leases, although made prior to the enactment of the laws, it is urged that if such legislation is upheld the contract clause of the Constitution gives little protection to private contractual rights.

Laws directly nullifying some essential part of private contracts are rare and are not lightly to be upheld by hasty and sweeping generalizations on the common good (*Barnitz* v. *Beverly, supra; Bradley* v. *Lightcap,* 195 U. S. 1), but no decision upholds the extreme view that the obligation of private contracts may never be directly impaired in the exercise of the legislative power. No vital distinction may be drawn between the exercise in times of emergency of the police power upon the property right and upon the contract obligations for the promotion of the public weal. The state in an emergency caused by flood or fire, when multitudes are homeless, might concededly compel owners of houses to take in undesired occupants in order to shelter them from exposure to storm and cold. Why then would the state have no power reasonably to regulate for a time the terms upon which a landlord under such conditions might put his tenants out when they promptly pay a reasonable compensation for the use of the property? The distinction thus proposed becomes illusive when practically applied.

No constitutional difficulty presents itself in the way of enforcing the laws on the ground of uncertainty as to what constitutes a reasonable rent or an oppressive agreement. Courts and juries are in civil cases constantly dealing with questions of proper care, just compensation, reasonable conduct, fair market value and the like. It is quite a different thing to say that Congress may not punish the act of making " any unjust or unreasonable

29

450   People ex rel. Durham R. Corp. *v.* La Fetra.

[230 N. Y.]          Opinion, per Pound, J.          [Mar.,

rate or charge " in dealing with necessaries because the language is too indefinite and uncertain upon which to fasten criminal liability. (*U. S.* v. *Cohen Grocery*, 255 U. S. ——.) The test is not what the jury may say, but what the jury may reasonably infer from the evidence. (*Nash* v. *U. S.*, 229 U. S. 373.) The exaction of an unjust and unreasonable rent makes oppressive the agreement under which the same is sought to be recovered.

The suspension of possessory remedies does not impair the jurisdiction of the Supreme Court in law and equity. (N. Y. Const. art. VI, § 1.) The legislature has power " to alter and regulate the jurisdiction " and to change the common law. (N. Y. Const. art. VI, § 3; *Matter of Stilwell*, 139 N. Y. 337, 342.)

The question comes back to what the state may do for the benefit of the community at large. Here the legislation rests on a secure foundation. (*Chicago & Alton R. R. Co.* v. *Tranbarger*, 238 U. S. 67, 76, 77.) The struggle to meet changing conditions through new legislation constantly goes on. The fundamental question is whether society is prepared for the change. The law of each age is ultimately what that age thinks should be the law. Decisions of the courts in conflict with legislative policy, when such decisions have been thought to be unwisely hard and stiff, have been met by constitutional amendments, as in the case of the decision of the Supreme Court of the United States in the Income Tax cases (*Pollock* v. *Farmers', etc., Co.*, 158 U. S. 601) which led to the adoption of the Sixteenth Amendment; and of this court on the statute which fixed an eight-hour day and the prevailing rate of wages for employees of municipal contractors; and on the Workmen's Compensation Law. (*People ex rel. Rodgers* v. *Coler*, 166 N. Y. 1; N. Y. Const. art. XII, § 13; *Ives* v. *South Buffalo Ry. Co.*, 201 N. Y. 271; N. Y. Const. art. I, § 19.) Each of the latter laws was also approved by the Supreme Court of the United States. (*Atkin* v. *Kansas*, 191 U. S. 207;

*N. Y. Central R. R. Co. v. White,* 243 U. S. 188.) The reaction on the courts is that the existence of a strong opinion in any real or fancied public need has been suggested as the sufficient test. (*Noble State Bank* v. *Haskell, supra.*) But constitutional limitations on the power of government are self-imposed restrictions upon the will of the people and qualify the despotism of the majority. Such limitations do not yield to strong opinions merely. They are incorporated in the fundamental law to restrict arbitrary legislative power. They forbid government to take from the owner without compensation whatever private right to control the use of his property the many may earnestly desire to deprive him of. Isolated expressions of the courts may suggest that whatever the legislature enacts on grounds of public policy should be sustained, but the courts may not uphold the exercise of arbitrary power. What is arbitrary and what is beneficent must be decided by common sense applied to a concrete set of facts. To uphold private contracts and to enforce their obligations is a matter of high public consequence, but the legislature has a wide latitude in doing what seems in accordance with sound judgment and reasonableness in order to bring about a great good to a large class of citizens, even at some sacrifice of private rights.

Curative action is needed. While some may question whether it may be said without exaggeration that these enactments promote the public health or morals or safety, they do in a measurable degree promote the convenience of many, which is the public convenience, and the public welfare and advantage in the face of the extraordinary and unforeseen public exigency, which the legislature has, on sufficient evidence, found to exist.

The conclusion is, in the light of present theories of the police power, that the state may regulate a business, however honest in itself, if it is or may become an instrument of wide-spread oppression (*People* v. *Beakes Dairy*

*Co., supra,* and cases cited; *Payne* v. *Kansas,* 248 U. S. 112); that the business of renting homes in the city of New York is now such an instrument and has, therefore, become subject to control by the public for the common good; that the regulation of rents and the suspension of possessory remedies so far tend to accomplish the purpose as to supervene the constitutional inhibitions relied upon to defeat the laws before us. (*Marcus Brown Holding Co.* v. *Feldman,* 269 Fed. Rep. 306.)\*

The order appealed from should be affirmed, with costs.

HISCOCK, Ch. J., HOGAN, CARDOZO and ANDREWS, JJ., concur; CRANE, J., concurs in result on opinion in *Guttag* v. *Shatzkin,* decided herewith (230 N. Y. 647); MCLAUGHLIN, J., dissents on dissenting opinion in *Levy Leasing Company* v. *Siegel,* decided herewith (230 N. Y. 634).

Order affirmed.

---

\*Affirmed by U. S. Supreme Court April 18, 1921.