Vincent N. Trimarco, J.
This is a summary proceeding for nonpayment of rent.
The landlord is the owner of a multiple dwelling at 1023 Stebbins Avenue, in the Borough of The Bronx, City and State of New York. The tenant occupies apartment six in said premises. The maximum rent for said apartment is the sum of $50.77 per month.
On the trial of the issues herein on August 27,1962, the tenant, a recipient of public welfare, appeared in person. The Department of Welfare of the City of New York (hereinafter referred to as the Welfare Department), through its counsel, appeared and requested permission of the court to appear amicus curiae. The same was granted.
On behalf of the tenant, the Welfare Department invoked as a defense to landlord’s petition for nonpayment of rent the recently enacted statute constituting section 143-b of the Social Welfare Law (L. 1962, ch. 997, enacted April 30, 1962, eff. July 1,1962). Section 143-b of the Social Welfare Law is known as the “ Spiegel Bill ” and in effect, in the language of its sponsor, is intended to ‘ ‘ stop the subsidizing of some 1 slumlords ’ by the Department of Welfare ”. It is said to he the first law of its kind in the United States. This statute is of far-reaching *724 importance and consequence and is therefore now set forth at length:
AN ACT to amend the social welfare law, in relation to rent checks.
Became a law April 30, 1962, with the approval of the Governor. Passed, by a majority vote, three-fifths being present.

The People of the State of New York, represented in Senate and Assembly, do enact as follows:

Section 1. Declaration of purpose and necessity. The legislature hereby finds and declares that certain evils and abuses exist which have caused many tenants, who are welfare recipients, to suffer untold hardships, deprivation of services and deterioration of housing facilities because certain landlords have been exploiting such tenants by failing to make necessary repairs and by neglecting to afford necessary services in violation of the laws of the state. Consequently, in the public interest, the necessity for the enactment of the provisions of this act is hereby declared as a matter of legislative determination.
§ 2. The social welfare law is hereby amended by inserting therein a new section, to be section one hundred forty-three-b, to read as follows:
§ 143-b. Avoidance of abuses in connection with rent checks.
1. Whenever a recipient of public assistance and care is eligible for or entitled to receive aid or assistance in the form of a payment for or toward the rental of any housing accommodations occupied by such recipient or his family, such payment may be made directly by the public welfare department to the landlord.
2. Every public welfare official shall have power to and may withhold the payment of any such rent in any ease where he has knowledge that there exists or there is outstanding any violation of law in respect to the building containing the housing accommodations occupied by the person entitled to such assistance which is dangerous, hazardous or detrimental to life or health. A report of each such violation shall be made to the appropriate public welfare department by the appropriate department or agency having jurisdiction over violations.
3. Every public welfare official shall have the power to initiate or to request the recipient to initiate before the appropriate housing rent commission any proper proceeding for the reduction of maximum rents applicable to any housing accommodation occupied by a person entitled to assistance in the form of a rent payment whenever such official has knowledge that essential services which such person is entitled to receive are not being maintained by the landlord or have been substantially reduced by the landlord.
4. The public welfare department may obtain and maintain current records of violations in buildings where welfare recipients reside which relate to conditions which are -dangerous, hazardous or detrimental to life or health.
5. It shall be a valid defense in any action or summary proceeding against a welfare recipient for non-payment of rent to show existing violations in the building wherein such welfare recipient resides which relate to conditions which are dangerous, hazardous or detrimental to life or health as the basis for non-payment.
6. Nothing in this section shall prevent the public welfare department from making provision for payment of the rent which was withheld pursuant to this section upon proof satisfactory to it that the foregoing violations were cleared. Where rents were reduced by order of the appropriate rent commission, the public welfare department may make provision for payment of the reduced rent in conformity with such order.
§ 3. This act shall take effect July first, nineteen hundred sixty-two.
*725 On the trial it was conceded that tenant had not paid the rent due for August, 1962. Goncededly, also, the tenant was and is a welfare recipient. As the basis for the refusal to pay the rent the Welfare Department called as a witness an inspector attached to The Bronx office of the Department of Buildings of the City of New York. A copy of the violations filed against premises 1023 Stebbins Avenue, The Bronx, the multiple dwelling in question, headed “ continued dangerous condition,” was received in evidence as tenant’s Exhibit “B”. Violations Nos. 100,101,102,109, 111, 125,126,131, 135,136 and 142 are set forth therein. Other items of violation appear in such exhibit headed “ detrimental to life or health ” and the same are Nos. 130,_ 133, 134, 137, 138, 139, 140, 141 and 143. Goncededly, again, there was no evidence of violation with respect to the particular apartment No. 6, the apartment occupied by the tenant herein. The inspector testified that of the violations mentioned some had been removed, some were still existent, and that with respect to some the department’s regulations had not been complied with. Tenant did not testify, and thereupon rested her case. Motion was made by amicus curias on behalf of tenant to dismiss landlord’s petition on the ground that the provisions of section 143-b of the Social Welfare Law constituted a valid defense to landlord’s petition. The landlord in turn moved for a final order.
In support of his motion the landlord raised the following contentions: (1) That section 143-b of the Social Welfare Law is violative of the Fourteenth Amendment of the Constitution of the United States, more specifically the right that the State must not deprive a person of property without due process of law; (2) that it cannot be argued that though the rent laws and regulations have been held to be constitutional, the newly-enacted statute, section 143-b of the Social Welfare Law, is constitutional; (3) that conceding that legislation reducing rent where there is a reduction of services is constitutional, landlord cannot be deprived of rent where violations do not exist in the particular housing accommodations, but may exist in the building in which the housing accommodations form a part; (4) that section 143-b of the Social Welfare Law creates two kinds of tenancies, the first being a tenant not on public assistance who may not withhold the rent, and the second being a tenant on public assistance who may withhold the rent; (5) that since the statute was for the benefit of tenants who are recipients of public assistance, that the violations must cover the housing accommodations of the particular recipient of public assistance and tenant must prove that such violations are dangerous to life or *726 health; and (6) that the provisions of this act contravene the provisions of section 1446-a of the Civil Practice Act, which should be controlling where violations exist in housing accommodations.
These contentions shall be considered in the order named. The first and second contentions are considered together.
The court finds and holds that section 143-b of the Social Welfare Law, in its entirety, is constitutional; that despite landlord’s contention herein, it is not violative of the Fourteenth Amendment to the United States Constitution, more specifically that the State is not depriving him of his property without due process of law. The cases cited by the landlord are inapplicable. The landlord quotes at length from the decision of Judge Fuld in Bucho Holding Co. v. Temporary State Housing Rent Comm. (11 N Y 2d 469) which upheld the constitutionality of the emergency rent legislation as a valid legislative enactment since it has as its purpose the protection of the public health, safety and general welfare in enacting legislation curtailing mass rent increases. The court therein further states that unquestionably the protection of the public against such increase at a time of rental housing shortage was a valid legislative purpose.
Section 143-b of the Social Welfare Law is an extension of emergency rent legislation which the court speaks of in the Bucho case. It is supplemental legislation, in effect, enacted to cure the cancer of subsidization of ruthless “slumlords” through the taxpayer’s purse. The emergency rent legislation which preceded this statute is no more confiscatory of landlord’s property, that is said section 143-b of the Social Welfare Law. In the Bucho case (supra) the Legislature was sustained in its efforts to protect the public against mass rent increases.
The reasons for the enactment of section 143-b of the Social Welfare Law were potently set forth in a public statement issued by Mayor Robert F. Wagner of the City of New York on March 26, 1962, wherein he stated: 1‘ This measure, together with the appropriate use of the Receivership Bill, should help substantially to eliminate slums and to prevent use of taxpayer’s money to support slums and slumlords.” Its purposes were again set forth in the memorandum by Governor Rockefeller, on May 1, 1962, when he signed the newly-enacted statute: “ The bill is directed at an increasingly important problem faced by welfare recipients. It has been estimated that as much as $25 million of welfare funds are paid annually to landlords of substandard dwellings of New York City alone. This bill, which parallels a system now successfully operating in Chicago, will provide a useful new weapon in the fight against slum housing.”
*727 Furthermore, the legislative purpose in enacting section 143-b of the Social Welfare Law shows clearly a most legitimate public object. Its preamble merits repetition at this point:
Declaration of purpose and necessity. The legislature hereby finds and declares that certain evils and abuses exist which have caused many tenants, Who are welfare recipients, to suffer untold hardships, deprivation of services and deterioration of housing facilities because certain landlords have been exploiting such tenants by failing to make necessary repairs and by neglecting to afford necessary services in violation of the laws of the state. Consequently, in the public interest, the necessity for the enactment of the provisions of this act is hereby declared as a matter of legislative determination.
The intent is clear — evils and abuses exist in buildings in which welfare recipients live; they must often live in dwellings unfit for human habitation. They cannot choose or be “ choosy ’ ’. ‘1 Slumlords ’ ’ take advantage of the situation. Slums multiply. The public health and welfare is endangered. Legislation is the only remedy. In the exercise of its power for the public good, the Legislature does act. Previous legislation or remedies having proven partly inadequate, effective legal surgery is required. Section 143-b of the Social Welfare Law is the cure “as a matter of legislative determination.” The statute is a valid exercise of the State’s police power, and is constitutional.
In the case of Teeval Co. v. Stern (301 N. Y. 346, 363) the Court of Appeals by Chief Judge Loughban said: 11 The State rent control statute was enacted to meet a passing emergency. It does not contemplate a taking of the property of any landlord. Even though it may, now and then, compel an owner to operate his real property at a loss, the statute is not for that reason to be condemned as an arbitrary use of the police power (Bowles v. Willingham, 321 U. S. 503, 516-519).
^Section 143-b of the Social Welfare Law is not confiscatory or arbitrary. It is a proper exercise of the State’s police power. “ The constitutionality of statutes authorizing the State to exercise its police power in the face of a shortage of residential housing has been previously held to be not only proper, but absolutely necessary, and the question of constitutionality has been settled beyond doubt. People ex rel. Durham Realty Corp. v. La Fetra, 230 N. Y. 429, 130 N. E. 601, 16 A. L. R. 152; Guttag v. Shatzkin, 1921, 230 N. Y. 647, 130 N. E. 929; Bloch v. Hirsh, 1921, 256 U. S. 135, 41 S. Ct. 458, 65 L. Ed. 865; Marcus Brown Holding Co., Inc., v. Feldman, 1921, 256 U. S. 170, 41 S. Ct. 465, 65 L. Ed. 877; Edgar A. Levy Leasing Co. v. Siegel, 1922, 258 U. S. 242, 42 S. Ct. 289, 66 L. Ed. 595. Such exercise of police power extends to control over eviction procedures.” (Suppus v. Bradley, 101 N. Y. S. 2d 557, 565 [affd. 278 App. Div. 337].) In Miller v. Schoene (276 U. S. 272, 279-280 [1928]) *728 the Supreme Court expressed the principle that “where the public interest is involved preferment of that interest over the property interest of the individual, to the extent even of its destruction, is one of the distinguishing characteristics of every exercise of the police power which affects property.” “ Either the rights of property and contract must when necessary yield to the public convenience, advantage and welfare, or it must be found that the State has .surrendered one of the attributes of sovereignty for which governments are founded and made itself powerless to secure to its citizens the blessings of freedom and to promote the general welfare ” (Judge Pound [later Chief Judge] in People ex rel. Durham Realty Corp. v. La Fetra, 230 N. Y. 429, 443).
The landlord concedes in raising point three, that legislation reducing rent where there is a reduction of services is constitutional, but contends that he cannot be deprived of rent where violations do not exist in the tenant’s housing accommodations, but may exist in the building of which tenant’s accommodations form a part. Section 143-b of the Social Welfare Law was enacted in aid of all preceding emergency rent legislation. Existent or pending violations in a building, certified to by the proper governmental agency, veritably constitutes a reduction in services, where the evidence indicates that they are dangerous, hazardous or detrimental to life or health. Furthermore, it is common knowledge that it is most difficult for welfare recipients, in these days of continued housing shortage, to obtain suitable and livable quarters and for that reason the newly-enacted law will help remedy an otherwise intolerable situation.
In contention four the landlord argues that section 143-b of the Social Welfare Law creates two kinds of tenancies — first, a tenant not on public assistance who may not withhold his rent; and, second, a tenant on public assistance who may withhold the rent. The courts of this State have upheld the principle that the equal protection of the law permits a wide range of discretion in classifying persons and things, as long as such classification is not arbitrary and rests upon a legitimate public purpose. “ A legitimate public purpose may always be served without regard to the constitutional limitations of due process and equal protection ” (People v. Arlen Serv. Stations, 284 N. Y. 340, 344). In Noyes v. Wohl (266 App. Div. 52, 55) the court states: “ The State has a broad discretion in classification in exercise of regulation and unless such exercise of power is arbitrary, there is no violation of the equal protection clause.”
In contention five landlord argues that since the statute was for the benefit of tenants receiving public assistance that the *729 violations must cover the particular housing accommodations of the particular welfare recipient and tenant recipient must prove they are dangerous, hazardous or detrimental to his life or health. It is true that on the day of trial there were no pending violations against tenant recipient’s apartment. The evidence adduced, however, disclosed existing and outstanding violations in the building wherein the tenant recipient resides, and such violations are still of record, and this court finds that they are dangerous, hazardous and detrimental to life and health.
The language of the statute is crystal clear. The violations need not be lodged against the apartment or housing accommodations of the welfare recipient, but against the building, or any part thereof. Subdivision 2 cited above reads in part: “ that there exists or there is outstanding any violation of law in respect to the building containing the housing accommodations ” (emphasis supplied). Subdivision 5 cited above reads in part: 11 to show existing violations in the building wherein such welfare recipient resides ” (emphasis supplied).
Lastly, the landlord contends that section 143-b of the Social Welfare Law contravenes the provisions of section 1446-a of the Civil Practice Act. The latter section provides in part: “ § 1446-a. Stay of summary proceedings or actions for rent. 1. Upon proper proof that a notice or order to remove or cease a nuisance or a violation or to make necessary and proper repairs has been made by the New York city department or departments, or officer or officers thereof, charged with the supervision of such matters, affecting a building or part thereof used for dwelling purposes in the city of New York, if the condition against which such notice or order is directed is, in the opinion of the court, such as to constructively evict the tenant from a portion of the premises occupied by him, the court before which the case is pending may stay summary proceedings to dispossess the tenant for non-payment of rent or any action for rent or rental value of such premises or any part thereof. The court shall in no case grant a stay where it appears that the condition against which the notice or order is directed has been created by the wilful or negligent act of the tenant or his agent. Such stay shall continue in force, until an order shall be made by the court vacating the same, but no such order vacating such stay shall be made, except upon three days’ notice of hearing to the tenant, or defendant, or his attorney, and proof that such notice or order has been complied with. ’ ’
Section 1446-a of the Civil Practice Act has reference to violations existent in the particular housing accommodation of the tenant such as to constructively evict the tenant from a *730 portion of the premises occupied by him. Section 143-b of the Social Welfare Law has reference to violations existent in a building as distinguished from a particular apartment or housing accommodation. Section 1446-a is therefore distinguishable from section 143-b of the Social Welfare Law. Section 143-b has a broader scope and reach than section 1446-a of the Civil Practice Act and is an additional remedy which the Legislature has deemed necessary to protect the rights of tenants who are welfare recipients; it is an additional remedy to compel recalcitrant landlords, who break the law, to do what the law compels them to do.
Present remedies are inadequate. Section 1446-a of the Civil Practice Act, even if utilized, is ineffective. Months — many months — pass before some landlords cure violations where the rent has been deposited in court under a stay order under section 1446-a. The Clerk of the court becomes a rent collector for the landlord.
Complaints to the Department of Buildings can be made by a tenant where violations exist. Experience shows, however, that even when violations are placed many months necessarily pass before a delinquent landlord can be and is summoned to a criminal court for appropriate punitive action, and even after such action some landlords continue to persist in their course of action of deliberately disregarding the law.
Section 143-b of the Social Welfare Law is the legislation needed by the Welfare Department to protect welfare recipients from “ slumlords,” who make no repairs and do not give tenants essential services. It temporarily withholds payments of rent until hazardous and dangerous violations are removed. It is the proper exercise of police power.
Section 78 of the Multiple Dwelling Law compels a landlord to keep every part of his premises in repair. The law-abiding landlord has no fear of this newly-enacted legislation. It strikes at the heart — and pocket — of the recalcitrant, lawbreaking landlord.
Pinal order is directed in favor of the tenant dismissing landlord’s petition, but without prejudice to the landlord instituting a new proceeding after he has complied with the law and cleared his building of all violations.