Van Voobhis, J. -(dissenting).
A mere statement of the provisions of section 143-b (subds. 2, 5) of the Social Welfare Law, in their application to this case, should be enough to demonstrate its unconstitutionality, both as denying the equal protection of the law and depriving appellant of property without due process of law (U. S. Const., 5th and 14th Amdts.; N. Y. Const., art. I, § 6). Ter.ants on welfare (as distinct from tenants not receiving public relief) are exempted from payment of rent, as well as dispossession, for any period during which there is outstanding anywhere in the building any violation of law relating to dangerous or hazardous conditions or conditions detrimental to life or health. There are no building violations in any of the three apartments in this building from which tenants—-who have not paid their rent—are sought to be evicted. There is no violation anywhere in the building which is dangerous or hazardous to these welfare tenants or detrimental to their health. It happens that in the apartment of a fourth tenant—not a welfare recipient — a door did not fit properly. The inspector testified that, when he called it to the landlord’s attention, it had been repaired “ but still the door would bind slightly. In other words, it would not close fully.” The inspector added: “ The tenant seemed happy, but I wouldn’t accept it.” Of course, that tenant, in whose apartment this “ violation ” existed, is obliged to continue to pay his rent out of his own pocket-because he is not receiving public relief. The statute discriminates with, as it seems to me, no constitutional basis for classification, in favor of those who do not support themselves. Because of the fact that this door will not completely close, the tenants of three other apartments in the build *495 ing, because they are on relief, whose apartments contain no violations, are permitted to continue to live there at the expense of the landlord without paying rent. The Welfare Department has appeared amicus in behalf of the tenants to save money for the city at the expense of the owner of the apartment house. As the Civil Court Judge who dismissed these petitions in summary proceedings said correctly in another case (Matter of Schaeffer v. Montes, 37 Misc 2d 722, 723) this “ is said to be the first law of its kind in the United States.” This is not remarkable if constitutional safeguards are to continue to have any further relation to real property of this character. Its constitutionality is in no manner sustained by the rent control cases such as People ex rel. Durham Realty Corp. v. La Fetra (230 N. Y. 429); Teeval Co. v. Stern (301 N. Y. 346); Twentieth Century Assoc. v. Waldman (294 N. Y. 571), or Block v. Hirsch (256 U. S. 135). The only suggestion of relationship to the public safety in an effort to relate it to the police power is that, unless this door (which is not a fire door) were completely closed, if a fire started in this nonwelfare tenanted apartment, it might spread slightly more rapidly into other portions of the building. If the door fitted perfectly, there would be no obligation on the tenant to keep it closed. Any fire hazard, the building inspector admitted, was a very remote possibility. It would be a safe assumption that there are many doors somewhere in apartments in multiple dwellings in New York’ City which do not completely close, and many more that are not always kept closed. But even if the spreading of fire were a probability, what possible relationship could there be to the public safety in denying dispossess warrants in these cases? - It could only mean that these welfare tenants would continue to be subjected to this fictitious hazard.
This statute recites that it was adopted to aid in eliminating slums. It would be related to that objective if payment for the use and occupation of the apartments were channeled to the landlord in such manner that the landlord would be required to spend it for the improvement of the property, but these provisions of this statute are unrelated to that end. They prevent the rent from being paid in any manner so that it could be used for repairs or improvements. Such provisions have no relation to slum clearance except to prevent it.
*496 Not only does this constitute deprivation of property without due process of law, but it denies the equal protection of the law to owners of dwellings occupied by tenants who are on public relief. This is illustrated by the circumstance that this landlord can continue to collect rent from the tenant not on relief in whose premises this trivial violation exists.
The orders appealed from should be reversed and dispossess warrants issued.
Judges Burke, Bergan, Keating and Breitel concur with Chief Judge Fuld; Judge Van Voorhis dissents and votes to reverse in an opinion in which Judge Scileppi concurs.
Orders affirmed.