WILLIAM WILLARD HOWARD and ALBERT G. MACINNIS, Appellants, *v.* THE CITY OF NEW YORK, Respondent.

First Department, January 13, 1922.

Municipal corporations — city of New York — provisions of Greater New York charter relating to purchase of supplies by city not applicable to exercise of power under chapter 813 of Laws of 1917 creating State Food Commission and giving city right to purchase supplies in emergency — pleadings — complaint in action on contract made pursuant to said chapter not demurrable for failure to allege compliance with charter — commissioner of public markets not exercising governmental function when acting under said chapter — determination by State Food Commission as to existence of emergency cannot be questioned by city in action on contract by it for supplies.

The provisions of the Greater New York charter relating to the purchase of supplies for the city do not apply to the exercise of the powers given by section 14 of chapter 813 of the Laws of 1917, which gives the

city the right in an emergency to purchase food and fuel and sell the same
to its inhabitants when permitted by the State Food Commission.

Hence, a complaint in an action on a contract for the purchase of supplies
by the city, signed by the commissioner of public markets pursuant to
chapter 813 of the Laws of 1917, is not demurrable for insufficiency,
although it does not allege compliance with the charter provisions.

The commissioner of public markets, when exercising the authority con-
ferred by said act was not exercising a governmental function of the
city, but was acting as its business agent in discharging a power conferred
by the State in the exercise of its police power called forth by a public
emergency.

Whether the emergency existed was a question of fact to be certified by
the governmental bodies of the city and to be determined by the State
Food Commission. When that Commission acted and gave the power
to the city the question of the existence of an emergency was determined
and cannot be questioned by the city, upon whose certificate the State
Board acted, in an action against it on a contract for the purchase of
supplies.

APPEAL by the plaintiffs, William Willard Howard and
another, from an order of the Supreme Court, made at the
New York Special Term and entered in the office of the clerk
of the county of New York on the 3d day of June, 1920,
denying plaintiffs' motion for judgment on the pleadings, and
granting defendant's motion for judgment on the pleadings
and sustaining defendant's demurrer to the complaint herein.

*Douglas Mathewson* of counsel [*Henry H. Spitz* with him
on the brief], for the appellants.

*John P. O'Brien,* Corporation Counsel [*Henry J. Shields*
of counsel; *John F. O'Brien* and *Harold Taylor* with him on
the brief], for the respondent.

PAGE, J.:

The action was brought to recover the balance due upon
the price of the sale of a cargo of salt herrings weighing
348,766 pounds at seven and one-half cents a pound and for
damages sustained in the way of demurrage paid, for detention
of the vessel for an unreasonable time, by reason of the
failure to remove the cargo within a reasonable time. The
contract for the purchase of the salt herrings was signed by
the commissioner of public markets. The defendant demurred
to the complaint and to each of the causes of action therein
alleged, on the grounds of insufficiency.

The alleged insufficiency is: (1) Because it does not appear on the face of the complaint that the contract was made in compliance with the provisions of the Greater New York charter and that the contract is, therefore, void; (2) that the conditions prevailing at the time that the Legislature passed chapter 813 of the Laws of 1917 did not call for the purchase of food by the city's agent without the observing of the charter provisions.

The question presented, therefore, requires a consideration of the scope and effect of chapter 813 of the Laws of 1917. Noncompliance with the various provisions of the Greater New York charter relating to the purchase of supplies for the city is conceded. Chapter 813 was passed at an extraordinary session of the Legislature and is entitled: " An act to define the policy of the State of New York in relation to the production, supply and control of the distribution of the necessaries of life, to insure an adequate supply thereof at a reasonable price, to prevent unreasonable profits by reason of speculation, to extend such policy in aid of the national government in providing for the national security and defense, to amend the Farms and Markets Law in relation to markets in cities, and to transfer the powers and duties conferred on a commission by chapters two hundred and five and five hundred and six of the laws of nineteen hundred and seventeen to the commission created by this act."

It provided for the creation of a State Food Commission and declared:

" § 4. Matters of public interest during a state of war. During the existence of a state of war, the production, manufacture, marketing, storage, accumulation, distribution, supply, waste, hoarding, destruction, cost to producers and distributors, price to consumers, and the expense of handling necessaries, are matters of public interest and proper subjects for investigation, encouragement, development, regulation and control by the State to the end that while such state of war exists, the people of the State may, in common with the people of other States, have an adequate supply of pure and wholesome food, their health be protected, their energies conserved, and that they may not suffer from the excessive cost, unreasonable prices or speculation in the necessaries of life."

It also provided:

" § 14. Purchase and sale of food and fuel by municipalities. Any municipality in this State may, in case of an actual or anticipated emergency on account of a deprivation of necessaries, by reason of excessive charges or otherwise, purchase food and fuel with municipal funds or on municipal credit, and provide storage for and sell the same to its inhabitants in such manner and through such agencies as it may determine, but before the exercise of any such power or authority by any municipality, it shall have the consent in writing from the State Food Commission to exercise such power. The mayor, if any, and the governing body or bodies of any such municipality shall file with the State Food Commission a resolution and certificate stating that such a necessity has arisen in said municipality, and otherwise satisfy the State Food Commission that such a necessity exists. The State Food Commission shall act upon the application as in its judgment the public interest requires, and may prescribe such regulations and restrictions as it deems wise.

" Special revenue bonds may be issued by the city comptroller for the purposes of this section in any city which issues such bonds and the same shall be issued in the manner provided by the city charter or other act applicable thereto."

The word " necessaries " as used in this act is defined to include foods (§ 3).

On the 19th day of October, 1917, the board of estimate and apportionment of the city of New York adopted the following resolution:

" Be it resolved and certified, pursuant to the provisions of section 14 of chapter 813 of the Laws of 1917, that on account of the deprivation of necessaries of life in the City of New York, by reason of a shortage in the supply of, and excessive charges for, milk, meats, other foods and fuel, an emergency exists which requires that the City of New York purchase milk, meats, other foods and fuel and provide storage for and sell the same to its inhabitants."

On October 23, 1917, the board of aldermen of the city of New York adopted a resolution identical with that adopted by the board of estimate and apportionment, and it was duly approved by the mayor. During the month of October, 1917, the mayor, the board of estimate and apportionment and the

board of aldermen, being the governing bodies of the munici-
pality of the city of New York filed with the State Food
Commission the above-mentioned resolutions and a certificate
stating and certifying to the existence of a then actual as well
as an anticipated emergency on account of a deprivation of the
necessaries of life by reason of excessive charges and otherwise,
and to the necessity arising from such emergency. On or
about November 1, 1917, pursuant to chapter 813 of the Laws
of 1917, the State Food Commission after due deliberation
granted the application made by the city of New York, and
consented in writing that the city of New York might exercise
the power of purchasing food and fuel with the municipal
funds and on municipal credit, and providing storage therefor
and selling the same to the inhabitants of such city, in such
manner and through such agencies as it might determine. On
January 7, 1918, the board of aldermen of the city of New
York by resolution duly adopted designated the commissioner
of public markets of the city of New York as the agency for
the purchase, storage and sale to the inhabitants of the city
of New York, of food and fuel, which resolution stated that
such designation was pursuant to the provisions of section
14 of chapter 813 of the Laws of 1917. This resolution was
duly approved by the mayor, and on February 13, 1918, the
contract for the purchase of the cargo of fish in this case was
made between the commissioner of public markets and the
plaintiffs. Pursuant to the terms ·thereof, the cargo was
delivered and duly accepted by the city of New York, and
$2,801.25 was paid on account of the purchase price.

Clearly this act of the Legislature was intended as an
emergency measure to meet conditions arising out of the
World War, in which the Nation was engaged. To meet the
extraordinary conditions, it was deemed wise to enable the
municipalities, whenever the exigencies of the situation justified,
to engage in the business of the purchase and sale of food
under the authority, regulation and restrictions prescribed
by the State Food Commission. The commissioner of public
markets, when exercising the authority conferred by this act
was not exercising a governmental function of the municipality,
but was acting as its ·business agent in discharging a power
conferred by the State in the exercise of its police power

called forth by a public emergency. Whether the emergency existed was a question of fact to be certified by the governmental bodies of the municipality and to be determined by the State Food Commission. When that Commission acted and gave the powers to the municipality the question of necessity and of the existence of the emergency was effectually determined and cannot be questioned in this case by the municipality upon whose certificate the State Board acted.

The Greater New York charter has many provisions requiring deliberation in procedure, publicity and limitation upon the authority of official action in relation to contracts for the purchase of supplies, which are necessary safeguards and wise provisions for the transaction of its business in ordinary times and under usual conditions but would be absolutely destructive of the exercise of the power conferred by chapter 813 of the Laws of 1917 in an emergency where the health, life or general welfare of the community is involved. The powers conferred by this act are not in terms limited by or prescribed to be exercised under the authority of the Greater New York charter, but on the contrary the power to prescribe regulations and restrictions is conferred upon and limited to the State Food Commission in its wisdom. The only mention of the provisions of a municipal charter relates to the manner of issuing special revenue bonds. If constitutional provisions relating to the use and enjoyment of private property, the inviolability of contract obligations, due process of law and judicial remedies may be suspended by the Legislature in the exercise of the police power called forth by conditions arising as an aftermath of the World War (*People ex rel. Durham R. Corp.* v. *LaFetra,* 230 N. Y. 429), certainly the Legislature while the war was raging had the power to suspend the charter regulations in regard to the method of incurring contract obligations and to confer the right to prescribe regulations upon a State agency created to deal with the emergency.

In my opinion the ordinary charter provisions do not apply to the exercise of the powers given pursuant to section 14 of chapter 813 of the Laws of 1917.

The order should be reversed, with ten dollars costs and disbursements, defendant's motion for judgment on the pleadings denied and plaintiffs' motion granted, with ten

dollars costs, with leave to the defendant to withdraw the demurrer and serve an answer within twenty days, upon payment of said costs.

CLARKE, P. J., DOWLING, MERRELL and GREENBAUM, JJ., concur.

Order reversed, with ten dollars costs and disbursements, defendant's motion denied and plaintiffs' motion granted, with ten dollars costs, with leave to defendant to withdraw demurrer and to answer on payment of said costs.