Max A. Suppus et al., Appellants, *v.* William Bradley et al., Respondents, and Joseph D. McGoldrick, as State Rent Administrator, Intervener, Respondent.

First Department, June 5, 1951.

*Milo O. Bennett* for appellants.

*Charles V. Scanlan* for respondents.

*Emory Gardiner* of counsel (*Robert H. Schaffer,* attorney), for intervener, respondent.

*Per Curiam.* Plaintiffs, landlords, attack the constitutionality of the State Residential Rent Law (L. 1946, ch. 274 as amd. by L. 1950, ch. 250) and the Rent and Eviction Regulations promulgated thereunder by the State Housing Rent Commission. Plaintiffs allege an absolute right to withdraw their property already on the rental market from such market without being required to procure a certificate of compelling necessity from the commission.. Neither side asks for a trial; plaintiffs moved for judgment on the pleadings; defendant, intervener, the State Rent Administrator, made a cross motion to dismiss the complaint for insufficiency; Special Term denied plaintiffs' motion and granted the cross motion of defendant, intervener; plaintiffs appeal.

Contrary to plaintiffs' contention, the State Residential Rent Law does not require a landlord to dedicate his property to use as housing accommodations. On the contrary, subdivision 4 of section 9 of the act as amended in 1950 expressly provides for such withdrawal, but if the withdrawal requires that a tenant be evicted from housing accommodations already on the rental market, such withdrawal may be made only after prior written approval of the State Rent Commission. The Legislature has found '' a serious public emergency '' existing in the housing of a considerable number of persons in the State and, to prevent hardship, the provisions of the act are declared to be necessary to protect '' the public health, safety and general welfare '' (State Residental Rent Law, § 1, '' *Declaration and findings* ''). The 1951 act, in addition, refers to '' the national emergency which presently confronts our country '' (L. 1951, ch. 443, § 1, eff. April 2, 1951).

By subdivision 2 of section 4 of the 1950 act the administrator is empowered to promulgate rules governing evictions. That such control is a valid and constitutional exercise of the police power of the State has been settled by the Court of Appeals and the United States Supreme Court (*Teeval Co.* v. *Stern,* 301 N. Y. 346, certiorari denied 340 U. S. 876; *Block* v. *Hirsh,* 256 U. S. 135). The constitutionality of a similar law has recently been upheld in *Loab Estates* v. *Druhe* (300 N. Y. 176), in a case in which a landlord on grounds similar to appellants' sought the unlimited right of withdrawing housing accommodations from the rental market. As an authority, that case is not distinguishable because there the landlord sought by evicting the tenants from housing accommodations to rebuild for commercial purposes. The primary aim of the act referring

to housing accommodations is not to prevent landlords from making a profit by commercial use of their properties, but to protect tenants from eviction at a time when because of the housing shortage it is difficult, if not impossible, for them to get another place to live.

Plaintiffs take the arbitrary position that they may absolutely refuse to make any application to the commission under the regulations because, as they claim, the regulations are so drawn as to make it impracticable or hopeless to procure such certificate. Contrary to plaintiffs' contentions, the regulations enacted pursuant to the law to implement its provisions provide for withdrawal of housing accommodations from the rental market and expressly require that a certificate " shall be issued " in the landlord's favor when the landlord establishes that he seeks " in good faith " to recover possession because of compelling necessity and undue hardship and with the intention permanently to withdraw the accommodations from housing and nonhousing rental markets without any intention to sell (Temporary State Housing Rent Commission, Rent and Eviction Regulations, § 59). When administrative procedures are afforded, resort may not be had to the court until exhaustion of such process (*People ex rel. Uvalde Asphalt Paving Co.* v. *Seaman,* 217 N. Y. 70; *Yakus* v. *United States,* 321 U. S. 414); and the rule may not be circumvented by asserting that holding the prescribed administrative hearing would result in damages (*Myers* v. *Bethlehem Shipbuilding Corp.,* 303 U. S. 41, 51).

If plaintiffs comply with the regulations and establish the conditions set forth therein, and the commission refuses a certificate of necessity, judicial review of the commission's findings and conclusions and the regulations themselves may be had under article 78 of the Civil Practice Act on the ground that the regulations or their application to a particular state of facts by the commission are either arbitrary, illegal or unconstitutional.

The objections raised by appellants to the act have been asserted directly or in substance and decided adversely to appellants' contentions by the Court of Appeals and the United States Supreme Court (*Loab Estates* v. *Druhe,* 300 N. Y. 176, *supra; Block* v. *Hirsch,* 256 U. S. 135, *supra; Teeval Co.* v. *Stern,* 301 N. Y. 346, *supra; Marcus Brown Co.* v. *Feldman,* 256 U. S. 170; *People ex rel. Durham Realty Corp.* v. *La Fetra,* 230 N. Y. 429, 442).

The order appealed from should be affirmed, with costs.

Van Voorhis, J. (dissenting). Plaintiffs appeal from an order dismissing the complaint on the ground that it fails to state facts sufficient to constitute a cause of action, and denying plaintiffs' motion for judgment on the pleadings. The appeal raises an important but limited question of constitutional law, different from the constitutionality of the State Residential Rent Law as a whole. It is a question that was not passed upon in *Teeval Co.* v. *Stern* (301 N. Y. 346), nor, as it seems to me, in any of the leading decisions by the Court of Appeals or by the Supreme Court of the United States on constitutionality of rent control, such as *Twentieth Century Associates* v. *Waldman* (294 N. Y. 571); *People ex rel. Durham Realty Corp.* v. *La Fetra* (230 N. Y. 429); *Loab Estates* v. *Druhe* (300 N. Y. 176); *Block* v. *Hirsch* (256 U. S. 135); *Marcus Brown Co.* v. *Feldman* (256 U. S. 170); *Bowles* v. *Willingham* (321 U. S. 503), and *Yakus* v. *United States* (321 U. S. 414).

The power of sovereignty can without doubt be employed to prevent a person from exploiting to the utmost a strategic advantage derived from public misfortune or distress, by impressing restrictions upon his use of property for economic gain or even for his own accommodation. The facts in *Marcus Brown Co.* v. *Feldman* (256 U. S. 170, 199, *supra*) and in *Block* v. *Hirsch* (256 U. S. 135, *supra*) as well as in the recent case of *Loab Estates* v. *Druhe* (300 N. Y. 176, *supra*) were that owners of real estate were endeavoring to devote it to a more profitable use, or to some economic purpose more advantageous to the owners than its occupancy by existing tenants. In the *Block* and *Marcus Brown Co.* cases the landlords sought to relet to other tenants at increased rentals; in the *Loab* case (p. 179), the landlord sought to withdraw residential accommodations from the rental market " for the purpose of demolishing the accommodations *and adapting the property to other commercial uses* " (italics supplied). The Court of Appeals held that to restrain it from doing so was a constitutional exercise of power. In none of these cases did the owner attempt to sterilize his property by effectively withdrawing it from every kind of use. Services incidental to modern apartment houses were required to be furnished, under *Marcus Brown Co.* v. *Feldman,* as a condition to the gainful use of the property by its owner as an apartment house. Emergency rent laws were held in those cases to impose legitimate restrictions upon the use of property by an owner for his own financial or other advantage. The plaintiffs in the present action have offered, on the contrary,

to rid themselves by the judgment of all benefit which they could derive from their property during the emergency.

It presents a different constitutional question from any involved in those cases whether government can commandeer a landlord's services and subject him to responsibilities involving criminal liability for nonperformance, by compelling him to manage his property for a particular purpose when he wishes to renounce its use for any purpose. Plaintiffs are husband and wife. The gravamen of the complaint is that they desire and ask to be adjudged to have the right to abandon the old three-family multiple dwelling in The Bronx which is the subject of this action, in order to be relieved from the burdens and responsibilities of being landlords. They offer to submit to judgment enjoining further rental, sale or use of this building during the emergency, and on this basis they claim to have the right (not subject to discretion of the Rent Commission) to withdraw it from the sale or rental markets.

In considering the extent of plaintiffs' responsibilities, it may not be amiss to note that section 2040 of the Penal Law, mentioned in the complaint, makes it a misdemeanor for any lessor or his agent to fail to furnish water, heat, light, power, elevator service, telephone service or other service or facility required expressly or by implication under leases or rental arrangements which have been carried over into these statutory tenancies (*Stern* v. *Equitable Trust Co.*, 238 N. Y. 267). Further obligations with accompanying penalties are provided by section 225 of the New York City Sanitary Code, requiring the maintenance of a minimum temperature of 65 degrees Fahrenheit; by section C26–1279.0 of the Administrative Code for failure to keep plumbing fixtures in proper maintenance and repair; and by sections 80 and 81 of the Multiple Dwelling Law which require the performance of other acts respecting cleanliness, including the regular emplacement and removal of receptacles for ashes, garbage and other refuse. Violations by landlords of these and other duties imposed by the Multiple Dwelling Law and by the State Residential Rent Law are punishable as misdemeanors by fine and imprisonment, increasing in severity in case of repeated violations.

Prior laws and decisions made provision for total withdrawal of real property from the market. In *People ex rel. Durham Realty Corp.* v. *La Fetra* (230 N. Y. 429, 440, *supra*) sustaining the constitutionality of the emergency rent laws of 1920, the opinion written by Judge Pound contained a proviso that " when

a landlord desires to withdraw from the business of renting his premises for dwelling purposes, or when other material questions arise, the parties aggrieved will then be heard in their own right.'' The Federal Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 904, subd. [d]) later merged into the Federal Housing and Rent Acts of 1947 and 1949 (U. S. Code, tit. 50, Appendix, § 1903) provided that '' Nothing in this Act shall be construed to require any person to sell any commodity or to offer any accommodations for rent.'' Concerning this subject, the United States Supreme Court said in *Bowles* v. *Willingham* (321 U. S. 503, 517, *supra*): '' There is no requirement that the apartments in question be used for purposes which bring them under the Act.'' The so-called '' stand-by'' acts enacted by the New York State Legislature by chapter 678 of the Laws of 1948 and chapter 591 of the Laws of 1949, both contain reservations similar to those in the Federal statutes (§ 9, subd. 4). It is evident that until the adoption of the New York State Residential Rent Law of 1950, such a proviso was thought by the Congress of the United States and the New York State Legislature to be a constitutional necessity. Both Federal and State statutes and decisions made clear that an owner of real estate must bear the yoke of emergency rent laws for so long as he keeps his property up for rent, sale or other use, but that he need not elect to continue to use the premises, in the language of the opinion in *Bowles* v. *Willingham*, '' for purposes which bring them under the Act.'' There is a dictum, to be sure, by Justice HOLMES in *Block* v. *Hirsch* that gas companies and other public utilities, operating under franchise, lack the absolute right to go out of business; but a public utility is not analogous to a three-family multiple dwelling in The Bronx.

Subdivision 4 of section 9 of the State Residential Rent Law of 1950, here involved, changes the substance of this proviso although ostensibly retaining the form. It commences by stating, in the language of the previous statutes: '' Nothing in this act shall be construed to require any person to offer any housing accommodations for rent ''. If it had stopped there, we would have no controversy in this case. Subdivision 4 continues, however, by adding this qualifying clause: '' but housing accommodations already on the rental market may be withdrawn only after prior written approval of the state rent commission, if such withdrawal requires that a tenant be evicted from such accommodations.'' It is this clause in the 1950

statute, going beyond anything contained in prior emergency rent legislation, whose constitutionality is challenged in this action.

Section 59 of the Rent and Eviction Regulations adopted by the Temporary State Housing Rent Commission determines in advance that if plaintiffs made an application to the commission it would be denied. But even if this were not so, plaintiffs contend that under the circumstances of this case they cannot constitutionally be subjected to the exercise of discretion by the commission.

A majority of the court take the position that this action will not lie in any event unless plaintiffs have exhausted what are deemed to be their administrative remedies by first applying to the Rent Commission for permission, in its discretion, to evict these tenants. I am unable to concur in that view. Plaintiffs are challenging the power of the Rent Commission to exercise discretion under this particular set of circumstances. They claim as of right. They can hardly be compelled to submit to the discretion of the Rent Commission except after their challenge to the commission's authority has been overruled. To hold that they must first go before the Rent Commission is equivalent to deciding against them the constitutional question which they raise in this action. If plaintiffs had instituted an article 78 proceeding to review an adverse decision by the Rent Commission, they would have been met by the contention sustained in *Matter of Otto* v. *Steinhilber* (282 N. Y. 71, 75) that only by plenary action can the constitutionality of such enactment be contested. An action has been held to be the correct procedure under such circumstances (*Dowsey* v. *Village of Kensington,* 257 N. Y. 221; *Nectow* v. *Cambridge,* 277 U. S. 183; *Evanns* v. *Gunn,* 177 Misc. 85, 86, FROESSEL, J.). In the *Dowsey* case it was said (p. 231): '' In such case the owner of the property cannot be required to ask as a special privilege for a variation of the restriction. The restriction itself constitutes an invasion of his property rights.''

The existence of an emergency does not signify that constitutional bars are to be lowered entirely, or that courts are absolved from a duty to analyze this statutory clause carefully in the light of the nature and extent of the emergency. The pendency of an emergency does not mean that anything goes. On the contrary, a greater duty is imposed upon the courts to exercise judgment to enable the demands of the emergency to be met without unnecessarily disrupting fundamentals in our

system of government. Plaintiffs can be awarded the relief which they seek without disturbing the constitutionality of other portions of the act.

Circumstances can be imagined, such as are recited in section 207 of the Executive Law, as added by the State Civil Defense Law (L. 1950, ch. 690, extended by L. 1951, ch. 784), where the services of property owners might be drafted for the benefit of persons who have been dispossessed by bombing or invasion in time of war, just as private employers and employees in every walk of life might be drafted to do what the exigencies of that kind of an emergency might require. The present housing emergency, however, as it has been defined by the Legislature and exists in fact, is not drastic enough for that. The recital that this act is necessary "in order to prevent exactions of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices tending to produce threats to the public health", points up the distinction which is latent or patent in all of the court decisions upon the subject, that it is one thing to impress restrictions upon a man's use of property in order to prevent his obtaining an undue advantage, and another to compel him to devote his property to a particular purpose when he wishes to renounce using it for any purpose. Preventing an owner from abandoning his property bears no relation to profiteering.

Counsel for the Rent Commission has argued that to grant the relief sought by plaintiffs would pave the way for a landlords' strike. Concerted action by landlords, resulting in loss of all benefit from their properties during the balance of the emergency, is unlikely. But if this emergency be sufficiently drastic to take away the right to strike, there would be no present constitutional barrier against statutes denying it under the same circumstances to building employees' unions or even to building trades unions generally. The danger in breaking down constitutional safeguards is that what can be done to one person or group today can be done to another tomorrow. Security demands that constitutional rights shall not be granted or withheld according to what is popular or unpopular from one moment to another.

In *Marcus Brown Co.* v. *Feldman* (256 U. S. 170, 199, *supra*), Justice HOLMES referred to "services that in the old law might issue out of or be attached to land". It was held that services incidental to the maintenance of apartment houses might be

required by law so long as the owners continued to use them as apartment houses. If the assumption of the responsibilities of landlords is to be compelled, however, against owners who desire to surrender use of their buildings, Justice HOLMES' reference to feudal law takes on a sinister significance. Serfs were attached to the soil, under the feudal system, and went with the land; the effect of the order appealed from would be to compel landlords to go with the building, even when they wish to let the building go. If such an exercise of power be valid, equally could the Legislature authorize the drafting of janitors, elevator operators, or other building employees by attaching them to the real estate. Tenants could even be frozen by preventing them from moving from one location to another. It is not a sufficient answer that neither the Legislature nor the Rent Commission has any such present intention. Liberty is kept by vigilance, not by a facile philosophy that it cannot happen here. Under different public pressures, the Legislature or some administrative authority might entertain such intentions, and derive from this or some similar decision the constitutional power to put them into effect.

These plaintiffs claim a constitutional right to be relieved of their responsibilities as landlords for the duration of this emergency, provided that they surrender all benefit from this property. They do not wish to be tied down to it if they are ill, or desire to devote their time and energies to other pursuits, or to live in a distant city, or for any reason whatever. They claim the right to go to California or to Timbuktu without having to be on hand to see that the temperature never falls below 65 degrees Fahrenheit, or to escape being charged with some other violation. To enjoy that freedom, they offer in their complaint to give up collecting rent from anybody or the power to sell to others. To deny them this right, upon those terms, violates liberties which should not lightly be taken away.

The Rent Commission's attorney questions plaintiffs' good faith in renouncing benefit from this real property, but that is not a reason for dismissing the complaint on its face. A motion to dismiss for insufficiency admits the facts alleged in the complaint, including the fact of such renunciation. Moreover, plaintiffs' good faith could not even be a question of fact, inasmuch as they offer to submit to sanctions to be imposed upon them by the judgment which they seek, in the form of an injunction effectively restraining them from selling, renting or devoting the subject property to any beneficial purpose during the rest

of the emergency. Even if this suit be brought mainly to test the constitutional question, as the attorney for the Rent Commission suggests, that does not mean that a decision can be avoided or should be rendered in support of a far-reaching but unnecessary extension of administrative power.

What has been written above in no manner runs counter to the main purposes of the State Residential Rent Law. This case presents a legal question that is related more closely to extension of the limits of administrative power than it is to the practical functioning of the rent control law.

The order appealed from should be reversed, with $20 costs and printing disbursements to appellants, and plaintiffs' motion for judgment on the pleadings should be granted, subject to injunctive provisions running with the land restraining plaintiffs from selling, renting or using the subject property for any purpose during the balance of the emergency.

PECK, P. J., DORE, CALLAHAN and SHIENTAG, JJ., concur in *Per Curiam* opinion; VAN VOORHIS, J., dissents and votes to reverse, in opinion.

Order affirmed, with one bill of $20 costs and disbursements to the respondents.