In the Matter of JAMES TROZZE, Petitioner, *v.* ROBERT DROONEY et al., Respondents.

City Court of Binghamton, September 17, 1962.

Thomas & Ray (*Herbert B. Ray* of counsel), for petitioner. *Sinon O'Neil* for respondents and for City of Binghamton Welfare Department, *amicus curiæ.*

JOSEPH W. ESWORTHY, J. The arguments on behalf of petitioner and the Welfare Department, *amicus curiæ,* and on behalf of respondents having been heard and due deliberation had

thereon, the court is of the opinion that section 143-b of the Social Welfare Law of the State of New York violates the Fifth and Fourteenth Amendments of the Constitution of the United States.

The motions made by counsel for the Welfare Department and respondents are denied and the warrant to evict and judgment as hereinbefore granted on September 4, 1962 are reinstated and the stay of execution on both, pending this decision, is vacated.

Petitioner landlord commenced a summary proceeding by causing a petition and precept to be served on respondent husband, tenant, returnable in the City Court of Binghamton, September 4, 1962. Respondent husband failed to appear and the court granted a warrant to evict and judgment for rent due. Thereafter, the Welfare Department of the City of Binghamton and respondent husband (welfare recipient) received knowledge of the impending execution of the warrant to evict and the Welfare Department appeared in court by its attorney, who sought to interpose the defense in section 143-b of the Social Welfare Law on behalf of the tenant. The petitioner's attorney was advised of respondent being a welfare recipient and a motion to vacate the warrant and set aside the judgment was brought on by the Welfare Department on September 6, 1962 and was opposed by petitioner. The court reserved decision and scheduled a hearing on the defense of a violation, which hearing was continued on the adjourned date of September 7, 1962.

The constitutional objections as raised by petitioner's counsel is that the section in question is in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States. The pertinent provisions of the Fifth and Fourteenth Amendments are as follows:

" No person shall be * * * deprived of life, liberty, or property, without due process of law " (5th Amdt.).

" Nor shall any State deprive any person of life, liberty, or property, without due process of law " (14th Amdt.).

In 1962 (L. 1962, ch. 997) the Legislature of the State of New York passed section 143-b of the Social Welfare Law entitled " Avoidance of abuses in connection with rent checks ". Subdivision 5 therein states: " It shall be a valid defense in any action or summary proceeding against a welfare recipient for non-payment of rent to show existing violations in the building wherein such welfare recipient resides which relate to conditions which are dangerous, hazardous, or detrimental to life or health as the basis for non-payment."

For what apparently is the first time in a summary proceeding, under article 83 of the Civil Practice Act for eviction or non-payment of rent, a statutory exception to the common law as embodied in our statutory law covering landlord-tenant has been added — for, even with the defense of constructive eviction, the right to interpose the same belongs to the party to the contract; i.e., the tenant, and not to any public agency.

This is probably why the Welfare Department through its attorney, appears *amicus curiæ* and to justify this position argues (as indicated by the chronological order of events in this case) on the day the court granted the warrant and judgment upon default of the respondents, the Welfare Department had no notice, although the respondent husband was personally served and failed to notify the department because he lacked knowledge of the defense. Without question the Welfare Department had no notice and there is no requirement to name them as a party in summary proceedings. While they were not advised by the respondent, they maintain this was and always will be the case because of the general lack of, or limited knowledge on the part of welfare recipients. The court appreciates the Welfare's appearance *amicus curiæ,* but it is constrained to recognize its appearance on behalf of the tenant. To be sure, section 143-b of the Social Welfare Law nowhere expressly states who, other than by implication, the tenant, can interpose the defense therein.

Lack of knowledge of the law has never been a defense, let alone an excuse. When this presumption that everyone is supposed to know the law is coupled with the silence in the section, it would seem to preclude the Welfare from any appearance on behalf of the respondents. Further, in this State we have not yet attained the status of having a public defender for indigent persons in court, yet Welfare argues because of the limited knowledge of the respondents, they must interpose this defense on behalf of this party. The Welfare Department, a public agency, wishes to appear in this case, and all the other unknown number of welfare recipients living in the other 80 houses in violation, and argues on all their behalf a defense personal to the tenant.

The defense, if the section is valid, can only belong to the tenant, and arises out of the contract relation with the landlord. Nowhere is the public agency in privity of contract with the landlord. Questioning by the court revealed the welfare laws and practices prohibit direct payment by the welfare agency to the landlord on behalf of the tenant. Subrogation of contractual rights is not uncommon in a proper case, but without any

privity or third-party beneficiary situation it is impossible. The use of public funds in providing a rental allowance to a welfare client-tenant does not create a subrogated right in and to the property for there is still no privity of contract between the Welfare and the landlord.

Contracts are property rights and are within the scope of the Fifth Amendment of the Constitution of the United States. Section 143-b of the Social Welfare Law destroys this constitutional guarantee, for after the contract has been made by the landlord to rent premises in return for payment of moneys from the tenant, it would take away the money from the landlord when the defense is interposed. Customarily, rent is paid in advance and the section would prohibit the landlord from recovering a money judgment for back rent, while all during this time the tenant has enjoyed possession of the premises. This would destroy the landlord's contract rights.

We have talked about contract rights heretofore, but the very nature of the contract is one which creates rights in property and the relationship of landlord-tenant in the law, deals with the right to hold property.

To be sure, the police power of the State can be exercised to fulfill the legislative intent in passing this section. This is stated as follows: "The legislature hereby finds and declares that certain evils and abuses exist which have caused many tenants, who are welfare recipients, to suffer untold hardships, deprivation of services and deterioration of housing facilities because certain landlords have been exploiting such tenants by failing to make necessary repairs and by neglecting to afford necessary services in violation of the laws of the state. Consequently, in the public interest, the necessity for the enactment of the provisions of this act is hereby declared as a matter of legislative determination."

However, the statute by which the intent is carried out, must not violate any of the constitutional provisions of the United States.

The Fourteenth Amendment to the United States Constitution prohibits any State from depriving any person without due process of law. The Welfare insists the rights of the people are paramount in getting rid of premises which are hazardous or detrimental to life or health. It argues that the present police powers under public health laws are inadequate to insure compliance with decent public housing conditions. This argument the court rejects for the public health laws of our State and city prescribe elaborate procedures to effect compliance. The facts that the procedures are cumbersome or have not been

enforced effectively until recently is of no justification for extending the police power of the State which exists in public health laws to the Social Welfare Law in an attempt to make landlords maintain their property according to minimum housing standards.

No one can quarrel with the intent of the Legislature in passing this section, but the manner in which the Legislature puts that intent into effect is the problem. The Social Welfare Law is not the proper vehicle to require compliance with minimum housing standards. Subdivision 20 of section 2 of the Social Welfare Law does not include this in the definition of public assistance.

Under our Constitution an owner of property may maintain his property in any manner he may choose. The police power of the State under public health, safety, or housing laws can restrict the use of this property, that is, prohibit maintaining public nuisances, prohibit fire traps, prohibit rooming houses without adequate safety measures, etc. This is for the public good and welfare and is an effective means to attain compliance with minimum standards, for it directly hits the pocketbook by cutting off income. Binghamton, like other cities, has many violations and the dwelling in question, from the evidence at the hearing, violates minimum housing standards. Still no proceeding has been brought in this court to enforce this owner into compliance under public housing laws.

Now, the Welfare Department wants to enforce compliance by taking over the burden, and burden it is, for upon questioning counsel for the Welfare Department, it would appear not only will they have difficulty knowing when a proceeding has started, but a percentage of their staff will have to check the violations as certified by the Housing Authority against all resident addresses of present welfare recipients. Then there is the time of the attorney and his staff for personal appearance in court, to personally defend the welfare recipient — in at least 80 more cases in the city.

The benefit the public will receive, if any, by Welfare handling this burden is hard to see, especially since Welfare costs are at an all-time high without this additional burden on the taxpayers.

The practical difficulties to be encountered under this section, the arbitrary or permissive manner of withholding or paying rent by welfare officials, merely point out some of the difficulties with this section. When these difficulties are considered with a knowledge of the 1,000 plus laws passed in the 100 days of work

in the 1962 legislative session, it isn't any wonder that the section is unconstitutional.

If the defense stated in the section were valid, an absolute property right in possession would be vested in the tenant, regardless of the landlord's rights and without any compensation for same. The right of ownership cannot be taken from him in this manner under our constitutional guarantees. (See *Wright* v. *Hart,* 182 N. Y. 330.)   Motion denied, etc.