Arthur Wachtel, J.
These are six dispossess proceedings for nonpayment of rent in respect to which there was a joint trial by consent of landlord and the tenants. In all these cases it was conceded that the relationship of landlord and tenant existed, that the rent was due, that it was the legal rent, that demand had been made, and that the rent was not paid. It was also conceded that the tenants in all these cases were welfare recipients.
The defense in each of these cases was based upon section 143-b of the Social Welfare Law of the State of New York. This act provides (L. 1962, ch. 997):
§ 2. The social welfare law is hereby amended by inserting therein a new section, to be section one hundred forty-three-b, to read as follows:
§ 143-b. Avoidance of abuses in connection with rent cheeks. 1. Whenever a recipient of public assistance and care is eligible for or entitled to receive aid or assistance in the form of a payment for or toward the rental of any housing accommodations occupied by such recipient or his family, such payment may be made directly by the public welfare department to the landlord.
2. Every public welfare official shall have power to and may withhold the payment of any such rent in any case where he has knowledge that there exists or there is outstanding any violation of law in respect to the building containing the housing accommodations occupied by the person entitled to such assistance which is dangerous, hazardous or detrimental to life or health. A report of each such violation shall be made to the appropriate public welfare department by the appropriate department or agency having jurisdiction over violations.
3. Every public welfare official shall have the power to initiate or to request the recipient to initiate before the appropriate housing rent commission any proper proceeding for the reduction of maximum rents applicable to any housing accommodation occupied by a person entitled to assistance in the form of a rent pajnnent whenever such official has knowledge that essential services which *349 sutil person is entitled to receive are not being maintained by the landlord or have been substantially reduced by the landlord.
4. The public welfare department majr obtain and maintain current records of violations in buildings where welfare recipients reside which relate to conditions which are dangerous, hazardous or detrimental to life or health.
5. It shall be a valid defense in any action or summary proceeding against a welfare recipient for non-payment of rent to show existing violations in the building wherein such welfare recipient resides which relate to conditions which are dangerous, hazardous or detrimental to life or health as the basis for non-payment.
6. Nothing in this section shall prevent the public welfare department from making provision for payment of the rent which was withheld pursuant to this section upon proof satisfactory to it that the foregoing violations were cleared. Where rents were reduced by order of the appropriate rent commission, the public welfare department may make provision for payment of the reduced rent in conformity with such order.
§ 3. This act shall take effect July first, nineteen hundred sixty-two.
The tenants interpose the defense provided by subdivision 5 of this act, namely that there are “ existing violations in the building which relate to conditions which are dangerous, hazardous or detrimental to life or health as the basis for nonpayment.” The tenants’ case rested upon the records of the Department of Buildings of the City of New York. Am Inspector of the Department of Buildings of the City of New York testified there were violations in the building which were dangerous, hazardous or detrimental to life or health. These violations included broken or defective condition of the banister and loose handrail at the stair hall in the upper intermediate landing from the fifth to the sixth stories (Violation No. 220); broken or defective angle iron support (“ loose from anchorage ”) at the stair hall, lower intermediate landing from the fifth to sixth stories (Violation No. 219); broken, defective fire-escape tread at the front fire-escape stack (Violation No. 207); loose gooseneck ladder strings at the north inner court fire escape (Violation No. 221); brick broken and loose at roof parapet wall at rear facing north inner court (Violation No. 223); failure to provide dwelling with a resident janitor, housekeeper or other responsible person (Violation No. 224); accumulation of rubbish in the cellar and yard (Violation No. 2(33); accumulation of rubbish in dumbwaiter shaft (Violation No. 222).
According to the records of the Building Department, all these violations remain uncaricelled.
The landlord first contends that there was no sufficient proof that these violations in fact continued and remained as of the date of trial. He criticizes the fact that the Inspector who testified did not report a number of these violations in the first instance and could not say whether at the time of trial they had *350 or had not been complied with. However, a mere denial of the existence of a condition by the landlord without affirmative proof, is not sufficient. The official records of the department are admissible pursuant to section 367 of the Civil Practice Act. The certified reports of the Inspectors of Housing and Buildings made in the regular course of their duties are admissible as prima facie evidence (see People v. Lederle, 206 Misc. 244; People v. Nisonoff, 293 N. Y. 597; Richards v. Robin, 178 App. Div. 535; Price v. Price, 194 App. Div. 158. See, also, 22 C. J., Evidence, p. 791; 32 C. J. S., Evidence, § 626). This is an exception to the hearsay evidence rule and rests mainly upon the very great inconvenience that would result in requiring the attendance in court of each of the officers who made each and every inspection. They are admissible because “ required by law to be kept, because the entries in them are of public interest and notoriety, and because they are made under the sanction of an oath of office, or in the discharge of an official duty.” (Ferguson v. Clifford, 37 N. H. 86, 95; Richardson, Evidence [8th ed.], § 363.) Section 367 of the Civil Practice Act provides that a certificate of the officer with respect to his official inspection is “ presumptive evidence of the facts therein alleged ”.
Obviously the landlord !,s remedy is to cure the conditions complained of and if upon a reinspection this has been effectuated, the violations will be dismissed of record and a certificate of the dismissal is sufficient to defeat the tenants’ case.
The landlord further contends that section 143-b is unconstitutional on the ground that ‘ ‘ it violates both State and Federal Constitutions, it sanctions the taking and the confiscation of property.”
The purpose of section 143-b is to protect tenants on relief from.slum conditions.
As the Legislature has stated in its declaration of purpose and necessity (L. 1962, ch. 997, § 1): “ The legislature hereby finds and declares that certain evils and abuses exist which have caused many tenants, who are welfare recipients, to suffer untold hardships, deprivation of services and deterioration of housing facilities because certain landlords have been exploiting such tenants by failing to make necessary repairs and by neglecting to afford necessary services in violation of the laws of the state. ’ ’
The law is specifically addressed to such buildings where there are existing violations which are 1 ‘ dangerous, hazardous or detrimental to life or health ’ ’. And it provides that where such violations exist, it shall be a defense to an action or summary proceeding for nonpayment of rent to show existing violations in *351 tlie building wherein such welfare incipient resides, which relate to conditions which are dangerous, hazardous or detrimental to life or health as the basis for nonpayment.
None of the pre-existing statutory remedies have been effective to eradicate the evil of slum conditions; tenants, particularly those on relief, are left Avithout any effective means to live in decent, habitable dwelling accommodations.
It is, of course, the fundamental laAV of our State and Nation, that property may not be taken Avithout due process of laAV. Under the Fifth Amendment of the Constitution of the United States, no person shall “ be deprived of life, liberty or property, Avithout due process of law”. Under the Fourteenth Amendment, no State shall “ deprive any person of life, liberty or property, without clue process of law ’ ’. These guarantees stem from the 29th chapter of Magna Charta, “which alone ” says Blackstone 11 would have merited the title that it bears of the ‘ Great Charter ’ ”. But due process of law has never meant the complete absence of restraint upon property. It Avas meant “ to secure the individual from the arbitrary exercise of the poAArers of government, unrestrained by the established principles of private rights and distributive justice.” ( Johnson, J., Bank, of Columbia v. Okely, 4 Wheat. [17 U. S.] 235, 244.)
It is also true that ‘ ‘ every holder of property, howex^er absolute and unqualified may be his .title, holds it under the implied liability that his use of it may be so regulated, that it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community. All property * * * js * * * held subject to those general regulations, which are necessary to the common good and general Avclfare. Bights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment, as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law, as the legislature, under the governing and controlling poAver vested in them by the constitution, may think necessary and expedient. This is very different from the right of eminent domain, the right of a government to take and appropriate private property to public use, whenever the public exigency requires it; Avhich can be done only on condition of providing a reasonable compensation therefor. The power we allude to is rather the police poAver, the power vested in the legislature by the constitution, to make, ordain and establish all manner of wholesome and reasonable laAvs, statutes and ordinances, either Avith penalties or Avithout, not repugnant to the constitution, as they shall judge to be for the good and *352 welfare of the commonwealth, and of the subjects of the same. It is much easier to perceive and realize the existence and sources of this power, than to mark its boundaries, or prescribe limits to its exercise.” (Chief Justice Shaw, Commonwealth v. Alger, 7 Cush. [61 Mass.] 53,84-85.) “It may be said in a general way, ’ ’ said'Justice Holmes “ that the police power extends to all the great public needs. * * * It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong or preponderant opinion to be greatly and immediately necessary to the public welfare. ’’ (Noble State Bank v. Haskell, 219 U. S. 104, 111.)
Judge Cooley in his Treatise on Constitutional Limitations ([8th ed.], vol. 2, pp. 1226-1227) quotes the following significant opinion: “The dimensions of the government’s police power are identical with the dimensions of the government’s duty to protect and promote the public welfare. The measure of police power must square with the measure of public necessity. The public need is the polestar of the enactment, interpretation and application of the law. If there appears in the phrasing of the law and the practical operation of the law a reasonable relation to the public need, its comfort, health, safety and protection, then such act is constitutional unless some express provision of the constitution be clearly violated in the operation of the act.
‘ ‘ Moreover the growth of the police power must from time to time conform to the growth of our social, industrial and commercial life. You cannot put a strait-jacket on justice any more than you can put a strait-jacket on business. Private initiative, enterprise and public demand are constantly discovering and developing new methods and agencies, honest and dishonest, and the police power must be always available to afford apt and adequate protection to the public.” (Wanamaker, J., Leonard v. State, 100 Ohio St. 456, 459.)
Upon the police power depends ‘ ‘ the security of social order, the life and health of the citizen, the comfort of an existence in a thickly populated community, the enjoyment of private and social life, and the beneficial use of property.” (Miller, J., Slaughter-House Cases, 16 "Wall. [83 U. S.] 36, 62 [1872].)
The same argument used by the landlord in this case was used to attack the exercise of the police power of the State to protect tenants where an emergency was created by shortage of residential houses. In these cases, the Supreme Court repeatedly upheld the constitutionality of the laws enacted to control rents and eviction procedures, to meet a critical time in the 1920’s and in our own time, when the imminent chaos of mass evictions *353 and skyrocketing rents made such legislation imperative. (People ex rel. Durham Realty Corp. v. La Fetra, 230 N. Y. 429; Guttag v. Shatzkin, 230 N. Y. 647 [1921]; Block v. Hirsh, 256 U. S. 135 [1921]; Marcus Brown Co. v. Feldman, 256 U. S. 170 [1921]; Levy Leasing Co. v. Siegel, 258 U. S. 242 [1922]; Suppus v. Bradley, 101 N. Y. S. 2d 557, affd. 278 App. Div. 337.)
The words of Mr. Justice Holmes are particularly pertinent to this matter. “ Housing is a necessary of life,” he said in Bloch v. Hirsh {supra, p. 156). “ The fact that tangible property is also visible tends to give rigidity to our conception of our rights in it that we do not attach to others less concretely clothed. But the notion that the former are exempt from the legislative modification required from time to time in civilized life is contradicted not only by the doctrine of eminent domain, under which what is taken is paid for, but by that of the police power in its proper sense, under which property rights may be cut down, and to that extent taken, without pay.” (Block v. Hirsh, supra, p. 155.)
Similarly, where confronted with the threat of ‘‘ chaos and confusion”, the City Council enacted subdivision c of section U41-7.0 of the Administrative Code of the City of New York, validated by chapters 4 and 699 of the Laws of 1948, whereby landlords were restricted in their right to withdraw their housing accommodations from the rental market. The Court of Appeals upheld the constitutionality of this act, again overruling the due process of law challenge of the landlord, on the authority of Bloch v. Ilirsh (supra). (Loab Estates v. Druhe, 300 N. Y. 176.)
And the constitutionality of the 1950 Emergency Housing Bent Control Law (L. 1950, ch. 250) was upheld by Mr. Justice Hammer in Suppus v. Bradley (supra).
The attorney for the landlord argues that “ it is important that the State should not, under the guise of public welfare take away the rights of the people.”
The same argument is used by Mr. Justice Esworthy, City Court of Binghamton, in Matter of Trozze v. Drooney (35 Misc 2d 1060) upon which attorney for the landlord relies in support of his ease. Nobody can deny, nor does Judge Esworthy deny, that there are constitutional means of imposing restrictions upon the ownership of property and housing accommodations in the exercise of the police power, for the public good and welfare — under public health, safety or housing laws — such as to prohibit nuisances, prohibit fire traps, prohibit rooming houses, without adequate safety measures, and indeed he concedes, by effective *354 means to attain compliance with minimum standards — “ by cutting off income ” and so directly hitting the pocketbook (p.1064).
He objects to the Welfare Department taking over the burden of enforcement, pointing out that subdivision 20 of section 2 of the Social Welfare Law does not include the maintenance of decent housing conditions in the definition of public assistance. However, section 143-b is itself an amendment to the Social Welfare Law and whatever omission there may be in the definition of public assistance has been adequately corrected by it. Furthermore, if the burden placed upon the Department of Welfare were so great, the statute would hardly have received the overwhelming support of Governor Rockefeller, Mayor Wagner, and both the State and City Commissioners of Welfare. In any event, the burden of enforcement is no basis for declaring the statute unconstitutional.
Indeed Judge Fsworthy concedes that “ the police power of the State can be exercised to fulfill the legislative intent in passing this section ’ ’ (p. 1063). But the fundamental challenge made by the court and repeated by landlords in the rent control cases and again by the landlord in this case is the same — that ‘ ‘ it would take away the money from the landlord when the defense is interposed * * * the section would prohibit the
landlord from recovering a money judgment for back rent, while all during this time the tenant has enjoyed possession of the premises. This would destroy the landlord’s contract rights ” (p. 1063). “If the defense stated in the section were valid, an absolute property right in possession would be vested in the tenant, regardless of the landlord’s rights and without any compensation for same. The right of ownership cannot be taken from him in this manner under our constitutional guarantees. (See Wright v. Hart, 182 N. Y. 330.) ” (p. 1065.)
The only case cited by the court is Wright v. Hart, but there the majority opinion criticized certain drastic requirements of the Bulk Sales Law then under consideration. The Bulk Sales Law had before been upheld by numerous other States, as Mr. Justice Vann pointed out in his strong dissenting opinion, and has since been upheld with certain draft variations. Indeed the strong dissenting opinion of Mr. Justice Vann was quoted with approval by the Supreme Court of the United States in Lemieux v. Young (211 U. S. 489).
There is nothing so drastic or onerous in the means specified in this act as to invalidate it, nor is there any taking of property involved in its operation. Just as the State Rent Control Law was enacted to meet a passing emergency, so is section 143-b *355 temporary legislation to meet the existing emergency. The State Bent Control Law “ does not contemplate a taking of the property of any landlord. Even though it may, now and then, compel an owner to operate his real property at a loss, the statute is not for that reason to be condemned as an arbitrary use of the police power. (Bowles v. Willingham, 321 U. S. 503, 516-519).” (Teeval Co. v. Stern, 301 N. Y. 346, 362.) So too in the case of section 143-b of the Social Welfare Law, there is no taking of property. The landlord is not permanently deprived of his rent. Under the law, the Welfare Department is empo"wered to withhold the rent for the benefit of the landlord until the violations which are dangerous, hazardous and detrimental to health and safety are removed.
Mr. Justice Tbimakco, in upholding the constitutionality of this law in Schaeffer v. Montes (37 Misc 2d 722, 730) dismissed the proceeding ‘ ‘ without prejudice to the landlord instituting a new proceeding after he has complied with the law and cleared his building of all violations. ’ ’
Numerous cases where section 143-b is invoked have been adjourned by consent of landlords and tenants pending the removal of violations which have been designated dangerous and hazardous by the Department of Housing and Buildings. And upon such proof of removal, the rent is directed to be paid to the landlord.
The statute under consideration is not as drastic as the 1920 rent control law, which suspended not merely holdover proceedings under the then Code of Civil Procedure, but all possessory actions as well. The same argument of confiscation and impairing the obligation of contracts was struck down by Judge Pound in People ex rel. Durham Realty Corp. v. La Fetra (230 N. Y. 429, 442, supra) as follows: “ The proposition is equally fundamental that the state may establish regulations reasonably necessary to secure the general welfare of the community by the exercise of its police power, although the rights of private property are thereby curtailed and freedom of contract is abridged. ’ ’
The shortage of residential housing accommodations and loss of bargaining power by tenants and the constant threat of intolerable housing conditions, have not only resulted in the control of rents. Bent control statutes also include legislation requiring landlords to provide proper services for tenants. Thus, the Legislature prohibited any increase in the maximum rent unless the landlord “ certifies that he is maintaining all essential services furnished or required to be furnished as of the date of the issuance of the order adjusting the maximum *356 rent and that ho will continue to maintain such services so long as the increase in such maximum rent continues in effect; nor shall any landlord be entitled to any increase in the maximum rent in any case where a municipal department having jurisdiction certifies that the housing accommodation is a fire hazard or is in a continued dangerous condition or detrimental to life or health, or is occupied in violation of law. ’ ’ (Emergency Housing Rent Control Law, § 4, subd. 4, par. [d]; L. 1946, ch. 274, as amd.) And it is further provided: ‘‘ Whenever any municipal department having jurisdiction certifies that any housing accommodation is a fire hazard or is in a continued dangerous condition or detrimental to life or health, or is occupied in violation of law, the commission may issue an order decreasing the maximum rent of such housing accommodation in such amount as it deems necessary or proper, until the said municipal department has certified that the illegal or hazardous condition has been removed.” (§ 4, subd. 5, par. [c].) The burden so imposed upon the Rent Commission by these sections with respect to hazardous and dangerous conditions has never been the basis for any effective constitutional challenge. Under this power, the State Rent Commission and currently the City Rent and Rehabilitation Administration have reduced rents in a vast number of dwellings — many to $1 per month. Nor does the landlord challenge the constitutionality of section 1446-a of the Civil Practice Act which provides: “ Upon proper proof that a notice or order to remove or cease a nuisance or a violation or to make necessary and proper repairs has been made by the New York city department or departments, or officer or officers thereof, charged with the supervision of such matters, affecting a building or part thereof used for dwelling purposes in the city of New York, if the condition against which such notice or order is directed is, in the opinion of the court, such as to constructively evict the tenant from a portion of the premises occupied by him, the court before which the case is pending may stay summary proceedings to dispossess the tenant for non-payment of rent or any action for rent or rental value of such premises or any part thereof.” The tenant in such case must deposit with the Clerk of the court the rent for the months then due, 11 which shall, for the purposes of this selection, be deemed the same as the tenant or defendant was liable for during the preceding month or such as is reserved as a monthly rent in the agreement under which he obtained possession of the premises.” Nor has the added burden upon the counts and the Clerks of the courts in accepting the deposits of rent under this section and *357 keeping accounts and records with respect thereto been any reason for challenging the constitutionality of this section.
The landlord argues that the principle of constructive eviction while recognized in section 1446-a is disregarded in the statute under consideration and states “ The principle that a tenant who has the beneficial enjoyment of property, must pay a rent even if there are conditions which might constitute a constructive eviction, is to be balanced with this law which says that a tenant may have the beneficial enjoyment of property, the condition not only need not be a constructive eviction, but may have nothing to do with the tenant’s apartment or the use or enjoyment thereof, yet, the tenant, if he or she is a welfare recipient, need not pay the rent. All others do.” (Landlord’s Memorandum, p. 5.) However, the landlord is losing sight of the fact that this law applies only where there are existing violations in the building which are 1 dangerous, hazardous or detrimental to life or health ’ ’. The purpose of the law to eradicate slums is not adequately served by conditions which may exist in a particular apartment only. It is concerned with buildings which are dangerous and unsafe to life and which are made so by conditions in the building uncorrected by the landlord. As Judge Pound said: “What is taken is the right to use one’s property oppressively and it is the destruction of that right that is contemplated and not the transfer thereof to the public use. The taking is, therefore, analogous to the abatement of a nuisance or to the establishment of building restrictions, and it is within the police power. ’ ’ (People ex rel. Durham Realty Corp. v. La Fetra, supra, p. 444.) Furthermore, even if the statute may effectuate a suspension of summary proceedings, that is no basis for invalidating the statute. “ [T] he right to a particular remedy is not a vested right * * * As a
general rule, every State has complete control over the remedies Which it offers to suitors in its courts.” (Cooley, Constitutional Limitations, [8th ed.], vol. 2, p. 754.) “The suspension of possessory remedies does not impair the jurisdiction of the Supreme Court in law and equity. (N. Y. Const. art. VI, § 1.) The legislature has power to alter and regulate the jurisdiction and to change the common law. (N. Y. Const. art. VI, § 3; Matter of Stilwell, 139 N. Y. 337, 342.) ” (Pound, J., in People ex rel. Durham Realty Corp. v. La Fetra, supra, p. 450.)
The argument that the equal protection of laws is denied to a class of persons whose rights are restricted, and that a class of persons whose rights are protected is favored, has been argued before and struck down in the rent control cases. (Block *358 v. Hirsh, 256 U. S. 135, supra; People ex rel. Durham Realty Corp. v. La Fetra, supra; Suppus v. Bradley, supra.)
In the words of Judge Pound (p. 447): “ One class of landlords is selected for regulation because one class conspicuously offends; one class of tenants has protection because all who seek homes cannot be provided with places to sleep and eat. Those who are out of possession, willing to pay exorbitant rentals, or unable to pay any rentals whatever, have been left to shift for themselves. But such classifications deny to no one the equal protection of the laws. The distinction between the groups is real and rests on a substantial basis. (People v. Beakes Dairy Co., 222 N. Y. 416.) ”
1 ‘ The protection afforded by the 14th Amendment in decreeing that no state shall deny to any person within its jurisdiction the equal protection of the laws, is not that for which plaintiffs contend. If the classification has relation to the purpose for which it is made, it does not contain the kind of discrimination against which the Equal Protection clause affords protection. Railway Express Agency v. New York, 336 U. S. 106, 69 S. Ct. 463, 93 L. Ed. 533; Patsone v. Com. of Pennsylvania, 232 U. S. 138, 34 S. Ct. 281, 58 L. Ed. 539; Marcus Brown Holding Co. v. Feldman, 256 U. S. 170, 41 S. Ct. 465, 65 L. Ed. 877; Metropolitan Casualty Ins. Co. of N. Y. v. Brownell, 294 U. S. 580, 55 S. Ct. 538, 79 L. Ed. 1070.
“ The argument here made by the plaintiff was before the court in Bowles v. Willingham, supra [321 U. S. 503, 518] where the court said: ‘ A member of a class which is regulated may suffer economic losses not shared by others. His property may lose utility and depreciate in value as a consequence of regulation. But that has never been a barrier to the exercise of the public power. L’Hote v. City of New Orleans, 177 U. S. 587, 598, 20 S. Ct. 788, 792, 44 L. Ed. 899; Welch v. Swasey, 214 U. S. 91, 29 S. Ct. 567, 53 L. Ed. 923; Hebe Co. v. Shaw, 248 U. S. 297, 39 S. Ct. 125, 63 L. Ed. 255; Pierce Oil Corp. v. City of Hope, 248 U. S. 498, 39 S. Ct. 172, 63 L. Ed. 381; Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U. S. 146, 157, 40 S. Ct. 106, 108, 64 L. Ed. 194; Euclid v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303; West Coast Hotel Co. v. Parrish, 300 U. S. 379, 57 S. Ct. 578, 81 L. Ed. 703. ’ ” (Suppus v. Bradley, 101 N. Y. S. 2d 557, 577-578, supra.)
The constitutionality of this law has been upheld by Judges of this court (Judge Trimarco, Civil Court, Bronx County in Schaeffer v. Montes, supra; Judge Shea, Civil Court, New York County, in Kuperberg v. Rivera, Trial Term, Part II, N. Y. L. J. Jan. 14, 1963, p. 17, col. 2; Judge Williams, Civil Court, Kings *359 County, in Sterling 1373 Corp. v. Ramos, Trial Term, Part XXI, N. Y. L. J., Jan. 23,1963, p. 18, col. 3). Where no violation relating to conditions which are dangerous, hazardous or detrimental to life or health is found in fact (Kuperberg v. Rivera, supra) or where such violations have in fact been removed prior to and as of the time of trial (Sterling 1373 Corp. v. Ramos, supra) the landlord is entitled to a final order. If the violations existed at the time of the nonpayment period but had been removed at the time of trial, the final order may be without prejudice to the rights of the tenants to have the rents adjusted by the New York City Bent and Behabilitation Administration because of the curtailment of services during the rental period in question. This is “ consistent with the provision of [-subdivision] 6 of [section 143-b of the Social Welfare Law] which permits the Public Welfare Department to pay rent which might be withheld upon satisfactory proof to it that the violations were cleared and with the decision by Judge Trimarco in Schaeffer v. Montes.,y (Williams, J., in Sterling 1373 Corp. v. Ramos, supra.)
It is noteworthy that companion legislation, section 309 of the Multiple Dwelling Law, as amended by chapter 492 of the Laws of 1962, popularly known as the 1 ‘Receivership Bill” which together with section 143-b of the Social Welfare Law has been described by the Mayor of the City of New York as providing substantial aid in eliminating slums and ” to prevent the use of taxpayer’s money to support slums and slumlords ” has also been upheld (Supreme Ct., Bronx County, Korn, J., in Matter of 1531 Brook Ave., 236 N. Y. S. 2d 833). By giving the power to appoint receivers of multiple divellings where there are serious fire hazards or threat to life, health or safety which the landlord has failed to remove, an additional means of combating slums has been enacted by the Legislature.
In appointing a receiver under this law, Judge Tilzer of Supreme Court, Bronx County, said: ‘ ‘ The affirmative action taken herein by the local authorities to remove the frightful conditions described is a salutory beginning towards the removal of the civil blight, as well as a threat to health and life, inherent in slum conditions. ' The Department of Buildings should be encouraged in like situations where dwellings are found to constitute a serious threat to life, health or safety, to make unrelenting use of the procedures made available by this new statutory device to the end, it is hoped, that a shameful condition existing in our community will be greatly diminished and ultimately eradicated.” (Matter of Department of Bldgs. of City of N. Y. [No. 714 East 9th St.], 37 Misc 2d 130, 131. The *360 same reasons require the enforcement of section 143-b of the Social Welfare Law.
“ Curative Action is needed.” (Pound, J., in People ex rel. Durham Corp. v. La Fetra, supra, p. 451. Curative action is here provided as a proper exercise of the police power.
The court finds that there are existing violations hereinabove specified in the building in question which are dangerous, hazardous or detrimental to life or health. Pursuant to subdivisions 2 and 6 of section 143-b of the Social Welfare Law, the Department of Welfare is withholding the rent payable to the landlord and will pay same to the landlord or the court will direct such payment upon proof that the said violations have been removed. Accordingly, final order is directed in favor of the tenant in each case dismissing the landlord’s petition, but without prejudice to the landlord instituting a new proceeding in the event the rent is not paid to him after he has complied with the law and removed the violations hereinabove designated which are dangerous, hazardous or detrimental to life or health.